JOSEPH MACIOCH v. THEODORE WAGNER AND OTHERS.
FREED CHEVROLET COMPANY, RESPONDENT.

134 N. W. (2d) 591.

April 9, 1965—No. 39,418.

572

 

*Ralph T. Lilly,* for appellants.

*Frank X. Cronan* and *Carroll, Cronan, Roth & Austin,* for respondent Freed Chevrolet Company.

*Frederick Allen,* for respondent plaintiff.

NELSON, JUSTICE.

This action, commenced in the Dakota County District Court January 11, 1963, arose out of an accident which occurred May 1, 1961, when a 1958 Chevrolet driven by defendant Theodore Wagner and registered in the name of defendant Bernard Wagner collided with plaintiff's automobile. Bernard Wagner had ordered a new car in April 1961 from defendant Freed Chevrolet Company (hereinafter called Freed), part of the consideration for which was to be a trade-in of the 1958 Chevrolet, so plaintiff joined Freed as a party.

Separate answers were filed by all defendants, defendants Wagner later serving amended answers and cross-claims against Freed. In its answer Freed specifically denied that it owned the Chevrolet involved in the accident.

On March 30, 1963, a discovery deposition was taken of Bernard Wagner in behalf of Freed and another was taken of Clarence E. Freed, owner of Freed, in behalf of defendants Wagner. Thereafter Freed moved for summary judgment in accordance with Rule 56.02 of the Rules of Civil Procedure on the grounds that Freed was in no way liable or responsible for the automobile involved in the accident and was entitled to summary judgment in its favor as a matter of law.

The late Judge R. C. Nelsen prepared an order and memorandum granting this motion in September 1963 but died prior to its execution. Judge William C. Christianson granted a similar motion December 12, 1963, but later vacated it to permit certain amendments by defendants Wagner. Freed's third motion for summary judgment was granted by Judge John B. Friedrich February 13, 1964, who held that the ownership of the 1958 Chevrolet remained in Bernard Wagner on May 1,

1961, when the collision which injured plaintiff occurred. Defendants Wagner appeal from the judgment entered pursuant to Judge Friedrich's order.

The facts are simple, and in the main undisputed, concerning defendant Bernard Wagner's negotiations with Freed, through its salesman, Al Hoffman, for the purchase of a new 1961 Chevrolet automobile. Hoffman's efforts brought about a sale to Wagner, which involved the signing of a purchase order at Wagner's home April 22, 1961. The consideration was fixed at $3,380, to be paid in part by the buyer by turning in the 1958 Chevrolet for a credit of $1,560 when the 1961 Chevrolet became available for delivery, but subject to a reappraisal of the 1958 Chevrolet at that time. Among the terms and conditions attached to the order which Wagner signed were the following:

"If the used motor vehicle which has been traded in as a part of the consideration for the motor vehicle ordered hereunder is not to be delivered to Dealer until delivery to Purchaser of such motor vehicle, the used motor vehicle shall be reappraised at that time and such reappraised value shall determine the allowance made for such used motor vehicle. If such reappraised value is lower than the original allowance therefor shown on the front of this Order, Purchaser may, if dissatisfied therewith, cancel this Order, provided, however, that such right to cancel is exercised prior to the delivery of the motor vehicle ordered hereunder to the Purchaser and surrender of the used motor vehicle to Dealer.

"Purchaser agrees to deliver to Dealer satisfactory evidence of title to any used motor vehicle traded in as a part of the consideration for the motor vehicle ordered hereunder *at the time of delivery of such used motor vehicle to Dealer*. Purchaser warrants any such used motor vehicle to be his property free and clear of all liens and encumbrances except as otherwise noted herein." (Italics supplied.)

At the taking of the discovery depositions, the transaction of April 22, 1961, was fully explored. Al Hoffman, the salesman, was not asked to give a deposition. Bernard Wagner, upon being questioned by plaintiff's attorney, testified as follows regarding the title transfer card to his 1958 Chevrolet:

"Q. Now, at the time this was signed, you didn't turn over your 1958 Chevrolet to Freed Chevrolet—

\* \* \* \* \*

"A. No.

"Q. You retained possession of the car?

"A. As far as—yes.

"Q. Did you sign the title transfer card on this date, if you remember?

"A. Well, when he come over there, he asked me for the title card, but whether I signed it or not, I do not remember.

"Q. Did you give him the title card?

"A. I laid it on the table.

"Q. Did he take it?

"A. He must have taken it; I never seen it after that.

"Q. Did you see him pick it up at all?

"A. I did not see him pick it up, no.

\* \* \* \* \*

"Q. This '58 Chevrolet that we are discussing was registered in your name—

"A. That's right.

"Q. —on the day of this accident?

"A. That's right."

Clarence E. Freed gave the following testimony:

"Q. \* \* \* Can you tell me what your business procedure and practice was?

"A. Our practice is to take a retail order, as you see there, and order the car for them.

\* \* \* \* \*

"Q. And when you take a retail order for a new car, and when you did this in April, 1961, do you at that time insist that an individual turn over to you the title to the used car that they are intending to transfer to you?

"A. No.

"Q. When do you insist that they present to you a signed title transfer card?

"A. Normally when the car is turned in.

\* \* \* \* \*

"Q. At the time the order blank was signed for a new car by Mr. Bernard Wagner at your establishment or by being presented with it by one of your salesmen on the 22nd of April, 1961, Mr. Freed, did you at that time ask your salesman to have Mr. Wagner deliver his 1958 Chevrolet to you on that date?

"A. No. A customer delivers the car when he gets his new one. That's the normal procedure. It can vary, but that's the normal procedure.

"Q. Mr. Freed, did you consider the sale of that 1961 Chevrolet Impala to have taken place on the day that order blank was signed?

"A. No.

\* \* \* \* \*

"Q. And when do you ask that they transfer title to you of the car they are trading in?

"A. After they get their new car; then the deal is completed. It just—

"Q. And was it your standard business practice to do this during April of 1961?

"A. Yes.

\* \* \* \* \*

"Q. Do you recall whether or not Mr. Wagner turned it in sooner?

"A. He never turned one in; I never saw one.

\* \* \* \* \*

"Q. —from the time he signed that order slip?

"A. That's right, the title card never was turned in to me.

"Q. Have you discussed this with your salesman Al Hoffman, this transaction with respect to Mr. Wagner's purchase and transfer or intended transfer of his '58 Chevrolet?

"A. Yes.

"Q. Did you ever ask him whether or not he received from Mr. Wagner the transfer or title card—

"A. Yes.

\* \* \* \* \*

"Q. And he has told you he could not find it?

"A. Yes.

"Q. How much credit allowance did you give to Mr. Wagner for the '58 Chevrolet?

"A. Fifteen hundred and sixty dollars.

\* \* \* \* \*

"Q. You gave him that much credit?

"A. Yes, on the order.

"Q. On the order?

"A. Not when I delivered the new car to him.

"Q. And it might be subject to change at that time, the credit that you would give him?

"A. Oh, yes. The car is subject to inspection when it is turned in. No deal is consummated until he turns the car in.

"Q. Did you consider yourself to be the owner of the 1958 Chevrolet at the time he signed that order blank?

"A. Certainly not.

\* \* \* \* \*

"Q. In other words, the original appraisal of the car on the order was a tentative appraisal, depending on the final consummation of the deal?

"A. Yes."

Due to the extent of the damage to the 1958 Chevrolet in the collision, Freed refused to accept it as any part of the consideration for the new car. Mr. Freed testified on that point as follows:

"Q. Mr. Freed, at the time Mr. Wagner had to pay cash for the new car and was not given any allowance for a used car, did he make any objections to you as to the allowances that had been previously made for his '58 Chevrolet?

"A. No.

\* \* \* \* \*

"Q. There was nothing further said with respect to his '58 Chevrolet, as to his receiving credit for it?

"A. We discussed it, and all it was worth was salvage; he could turn it in for salvage, or he could keep it himself. He elected to keep it himself."

1. The rule is well established that registration of an automobile under the state motor vehicle law is prima facie evidence of ownership but not conclusive evidence of title in the party in whose name the car is registered. It may be rebutted by evidence of the true intention of the parties. Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582; Bolton-Swanby Co. v. Owens, 201 Minn. 162, 275 N. W. 855; Holmes v. Lilygren Motor Co. Inc. 201 Minn. 44, 275 N. W. 416; Carey v. Broadway Motors, Inc. 253 Minn. 333, 91 N. W. (2d) 753; Haugen v. Dick Thayer Motor Co. 253 Minn. 199, 91 N. W. (2d) 585; Stroesser v. Hopper, 269 Minn. 96, 129 N. W. (2d) 913.

2. The question presented on this appeal is governed, however, by the provisions of the Uniform Sales Act, Minn. St. c. 512, pertinent sections of which are as follows:

§ 512.18. "(1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

§ 512.19. "Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer.

"Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed."

As we view the record, which includes the purchase agreement and the depositions, we think that it conclusively establishes that Freed

was entitled to summary judgment as a matter of law. The additional terms and conditions of the purchase agreement quoted above clearly establish that before accepting the 1958 Chevrolet to apply on the purchase price of the new 1961 Chevrolet Freed required a reappraisal to determine the then value of the 1958 Chevrolet and also that if the reappraised value was less than the original allowance Wagner had the right to cancel the order prior to delivery of the new car. Wagner also agreed to furnish satisfactory evidence of title to the 1958 Chevrolet at the time of delivery of that car to Freed. These provisions are entirely inconsistent with a transfer of title to Freed by Wagner before the 1961 automobile became available for delivery. The depositions conclusively establish that the parties understood that title and possession of the 1958 Chevrolet should remain in Wagner until Freed's delivery to him of the new automobile. Under all facts and circumstances presented by the record we cannot escape finding, as a matter of law, that the true intention of the parties was not to consummate the contract until Freed delivered the new car and exercised its right of reappraisal of the 1958 Chevrolet.[1] It also follows that the title to the 1958 Chevrolet was, as a matter of law, in Bernard Wagner at the time of the collision with plaintiff's automobile on May 1, 1961.

Appellants rely on Haugen v. Dick Thayer Motor Co. *supra,* and

---

[1] The question of the intention of the parties to a contract to sell as to when the property in its subject matter is to pass to the buyer is for the jury in doubtful cases, evidence being admitted which might be calculated to show the intention of both parties as indicated to each other. However, the whole of the contract of the parties here having been reduced to writing, this question could properly be determined by the court, as is true also if the facts are so clear as to justify but one conclusion and generally also if the facts are undisputed. 2 Williston, Sales (Rev. ed.) § 262; Rail v. Little Falls Lbr. Co. 47 Minn. 422, 50 N. W. 471.

For other cases dealing with "intention," see Schnirring v. Stubbe, 177 Minn. 441, 225 N. W. 389; Presley Fruit Co. v. St. Louis, I. M. & S. Ry. Co. 130 Minn. 121, 153 N. W. 115; E. L. Welch Co. v. Lahart Elev. Co. 122 Minn. 432, 142 N. W. 828; Haugen v. Dick Thayer Motor Co. 253 Minn. 199, 91 N. W. (2d) 585.

Carey v. Broadway Motors, Inc. *supra*, but the facts in those cases are not closely analagous to the facts in the case at bar.

We reach the conclusion, upon all the facts before us and the applicable law, that the trial court properly awarded summary judgment to defendant Freed against plaintiff and defendants Wagner.

Affirmed.