## CHARLES GIBEAU, TRUSTEE FOR HEIRS OF JEAN DELORES MAYO, v. JAMES MAYO AND ANOTHER.

158 N. W. (2d) 589.

April 26, 1968—No. 40,759.

*Spellacy, Spellacy & Lano* and *John A. Spellacy,* for appellant.

*Murphy & Kalar* and *William E. Kalar,* for respondent Jenner.

ROGOSHESKE, JUSTICE.

Plaintiff appeals from an order denying an alternative motion for judgment notwithstanding the verdict or for a new trial.

This action was brought to recover damages for the death of Jean Mayo caused by injuries she sustained when a 1961 Pontiac driven at high speed by her husband, defendant James Mayo, missed a curve and left a highway a short distance north of Grand Rapids, Minnesota. The accident occurred on August 8, 1965, 39 days after Mr. and Mrs. Mayo's marriage. This action was instituted by decedent's former husband as trustee for the benefit of the three young children of their marriage, who were living with defendant Mayo and their mother (decedent) at the time of her death. Arthur C. Jenner, a licensed used-car dealer and operator of a salvage yard, was joined as defendant upon plaintiff's claim that he was the owner of the Pontiac which Mayo was permitted to drive while he was negotiating its purchase.

The evidence leaves no doubt that the court was fully justified in finding as a matter of law that defendant Mayo's negligence in operating the automobile caused the accident. Since it was undisputed that, if Jenner owned the Pontiac, Mayo was driving it with his consent,[1] the only questions submitted to the jury on the issue of liability were the ownership of the Pontiac and assumption of risk by decedent. Upon clear instructions pertaining to the question of ownership, alternative general ver-

---

[1] Minn. St. 170.54.

dicts were submitted permitting the jury to find against Mayo alone or against both defendants if Jenner were found to be the owner. The verdict returned read:

"We the jury in the above entitled action, find for the plaintiff and against defendant, James Mayo, and assess his damages in the sum of Twenty Thousand and no/100 ($20,000.00) Dollars."

The only significant issue raised on this appeal is whether the trial court erred in not holding as a matter of law that on August 8, 1965, the time of the tragic accident, Jenner was the owner of the Pontiac. Plaintiff's claim is based upon the theory that the relevant evidence on this issue, when considered in conjunction with a policy of liberally construing the Safety Responsibility Act so as to effect ownership in a responsible party, requires this conclusion. He argues that it is "more than coincidence" that in every case of this type the court has sustained findings of ownership in a dealer or other responsible person rather than in a purchaser. He maintains that these decisions are in furtherance of the policy of the Safety Responsibility Act to impose liability upon financially responsible parties for injuries to innocent third parties whenever it is possible to do so. While it is true that our prior decisions bespeak a liberal policy of suppressing the mischief sought to be avoided by the act referred to, we cannot agree that we are compelled by any decisions of this court to regard the issue of ownership on this record otherwise than as one of fact properly submitted to the jury for a finding either as rendered or against both defendants. It must be emphasized that plaintiff is the one who makes the affirmative claim that Jenner held title. Thus, the burden of proving ownership in Jenner was upon plaintiff. Our refusal to upset the finding made does not result in any deviation from the policy underlying the Safety Responsibility Act, because upon this record it is evident that the jury could have concluded that plaintiff failed to sustain his burden of persuasion upon a disputed fact issue. The evidence was conflicting, not conclusive, and was adequate to support the jury's finding—clearly implicit in the verdict returned—that title had passed from Jenner to Mayo prior to the accident.

The rules governing the transfer of title to an automobile are set out

in two recent decisions relied upon by plaintiff and need not be restated.[2] It is sufficient to note that in general, as the court in substance instructed the jury, title passes from the seller to the buyer when the parties themselves intend it to pass and, in ascertaining such intention, "regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case." [3] Title may pass even though the time of payment be postponed.

While there is very little dispute as to the conduct of the parties, the testimony is in irreconcilable conflict concerning their intentions. In July of 1965, shortly after his marriage to decedent, Mayo began to work for Jenner and soon thereafter became interested in buying the Pontiac, which he was thereupon permitted to use without restrictions. Jenner, at this time admittedly the owner, acquired the Pontiac on a trade, and the previous owner merely signed the title card in blank (his signature being unacknowledged under oath) pending resale by Jenner. The Pontiac had a retail value of about $1,200, but Jenner and Mayo negotiated a price of $1,000. Jenner believed he had the car "mortgaged on a floor plan" but learned this was not correct after the accident. Mayo could not pay cash, and initially Jenner agreed to finance $200 of the price on weekly payments of $10 by Mayo but insisted that Mayo get financing for the $800 balance. Although he had previously financed sales, he preferred outside financing. On July 27, 1965, the title card was completed and the signature of the former owner and that of Jenner (as purchaser) acknowledged under oath. Thereafter, Jenner and Mayo signed an order form containing the terms of the sale, and at the same time a bill of sale and application for transfer of title was executed by both. After their signatures were acknowledged by a notary, it was left for Jenner to pick up. Among other printed provisions, the order form provided:

"* * * This order is not binding unless authorized by an officer or executive of the dealer, and purchaser's credit has been okayed by finance company."

---

[2] Macioch v. Wagner, 270 Minn. 571, 134 N. W. (2d) 591; Stroesser v. Hopper, 269 Minn. 96, 129 N. W. (2d) 913.

[3] Minn. St. 1961, § 512.18(2).

Such approval was never obtained as Mayo failed in his attempts to get financing from a finance company and two banks (apparently because he had declared personal bankruptcy in 1963). When Jenner left on a hurried trip to Chicago just before the accident, he had received no payment on the purchase price and he knew of Mayo's unsuccessful attempts to get financing.

On the narrow and pivotal dispute of whether the parties intended that the transfer of title should take place before financing was arranged or completed, the testimony of both Mayo and Jenner is confusing, ambiguous, contradictory, and (without the benefit of evaluating their demeanor on the witness stand) appears to be in hopeless conflict. There is both obscurity and conflict as to whether Jenner assured Mayo when leaving for Chicago that he need not worry about financing because Jenner would obtain it or merely that he would try to help Mayo obtain it. Both testified, in effect, that at that time Jenner asked Mayo, "Do you want the car?" to which Mayo replied, "Yes," and Jenner responded, "It is yours." There is conflict as to the date on which the sales order and the title card were signed and the latter acknowledged, and also as to whether Jenner's refusal to turn over Mayo's last paycheck was because Jenner required Mayo to pay for the damages to the Pontiac—implying ownership in Jenner—or whether it was held to apply on the purchase price— implying ownership in Mayo. These and other conflicts developed because of the variance and contradictions in testimony given at pretrial depositions and at trial.[4] As the trial court observed in denying plaintiff's post-trial motion:

"* * * Admittedly, this evidence left something to be desired. There were contradictions not only as between the testimony of defendant Mayo and the testimony of defendant Jenner but contradictions also in the testimony of each considered alone. As witnesses, both defendants were inclined to be easily led and their answers to questions relating to the transaction involving a possible transfer of ownership depended upon which counsel was asking the leading questions."

---

[4] Jenner's motion to try the issue of ownership separately was resolved when it was agreed to avoid any questions regarding the parties' discussion of obtaining insurance coverage.

In this context, determining when the parties intended title to pass depended upon the jury's evaluation of the credibility of the witnesses and the persuasive force of their declarations, as well as upon the inferences to be drawn from the objective manifestations of their intent as revealed by evidence of their conduct and the documents submitted. Where the resolution of a disputed fact issue turns largely upon an assessment of the relative credibility of witnesses whose testimonial demeanor was observed only by the jury and the trial court and the latter has approved the finding made, we are obliged to affirm even though we might have reached a contrary finding.[5]

Plaintiff cites as controlling on the issue of ownership Macioch v. Wagner, 270 Minn. 571, 134 N. W. (2d) 591, and Stroesser v. Hopper, 269 Minn. 96, 129 N. W. (2d) 913. Both of these cases are distinguishable. The Stroesser case is an affirmance of a jury verdict against the dealer, and Macioch, an affirmance of a summary judgment. In Macioch, the whole of the agreement between the parties had been reduced to writing. The case is therefore factually distinguishable and consistent with the disposition of this appeal, for we said (270 Minn. 578, note 1, 134 N. W. [2d] 596):

"The question of the intention of the parties to a contract to sell as to when the property in its subject matter is to pass to the buyer is for the jury in doubtful cases, evidence being admitted which might be calculated to show the intention of both parties as indicated to each other. However, the whole of the contract of the parties here having been reduced to writing, the question could properly be determined by the court, as is true also if the facts are so clear as to justify but one conclusion and generally also if the facts are undisputed."

We have carefully considered other claimed errors relating to the form

---

[5] Since the result of this case is surely not in accord with the underlying policy of the Safety Responsibility Act, it may be viewed as demonstrating that the rules which govern the time at which title passes leave much to be desired in their application to the transfer of title to automobiles, especially as this question so frequently affects responsibility for damages to innocent third parties during the period of negotiations between seller and buyer. The remedy, of course, lies with the legislature.

of the verdict; the court's instructions, and evidentiary rulings. A discussion of these would add nothing of substance to our conclusions that the question of ownership was properly submitted and that the parties were afforded a fair trial, free of prejudicial error.

Affirmed.