**Buford FAUST, et al., Respondents,**

v.

**Gerald E. PARROTT, et al., Appellants.**

**No. 48074.**

Supreme Court of Minnesota.

Sept. 8, 1978.

---

Patrick Stewart, Lakeville, for appellants.

Lawrence, Costello & Moratzka and Timothy K. Dillon, Cannon Falls, for respondents.

Heard before SHERAN, C. J., and ROGOSHESKE and TODD, JJ., and considered and decided by the court en banc.

TODD, Justice.

Plaintiffs purchased a salvage business from defendants and received, in addition to the business assets and goodwill, the defendants' contractual promise not to compete in the salvage business within a 100-mile radius of the plaintiffs' operation. Plaintiffs brought this action, alleging a breach of that covenant. The jury returned a verdict in plaintiffs' favor, and defendants appeal, challenging the sufficiency of the evidence and the proof of damages. We affirm the jury's verdict on the question of liability, vacate the damage award, and remand the case for a new trial on the amount of damages.

This case has its foundation in the alleged breach of a covenant not to compete which accompanied the sale of a business enterprise. On April 16, 1976, a purchase agreement was executed which set forth the terms of the transfer of Polly's Auto Parts from its owners, Gerald and Janis Parrott, to Buford and Gloria Faust. The sale included all the inventory, equipment, buildings, and goodwill of the auto parts company. Before and after the sale, the company has been a salvage operation, involved in the buying and selling of all forms of scrap.

The Fausts made a total downpayment of $58,000 and assumed the balance of their obligation in the form of a contract for deed. The contract requires that $1,000 be paid to the sellers on the 22nd day of each month. The purchase agreement also contained the following typewritten language, restricting future competition between the buyers and sellers:

"In addition, sellers agree that from and after the closing, they will not compete in auto salvage with buyer within a radius of 100 miles of the land hereinbefore described during any period of time that the contract for deed remains unpaid and in no event less than ten years."

Prior to the sale, the Parrotts had lived in a house on the premises of Polly's Auto Parts. After the sale was closed, however, the Parrotts moved to a new home 1½ miles from their former business. The Fausts took over the operation of the salvage yard in accordance with the terms of the purchase agreement and changed the name of the business to Viking Auto Salvage, Inc. Subsequently, several incidents occurred which led the Fausts to suspect that the anti-competitive covenant was being violated by the Parrotts.

This action was begun with the Fausts as plaintiffs, alleging that the covenant had been broken and that the Parrotts had "denied the business goodwill which had been specifically contracted for by the parties." Following the jury trial, a verdict was returned in plaintiffs' favor, awarding $20,000 in damages. Defendants immediately moved for judgment notwithstanding the verdict. The trial court denied this motion on the condition that plaintiffs consent to a reduction of the award to $13,500. Plaintiffs consented to the remittitur, and this appeal followed.

The issues raised for our consideration are:

(1) Does the evidence sustain the jury's finding that defendants breached their covenant not to compete?

(2) Is there adequate proof of the damages actually suffered by plaintiffs as a direct consequence of the breach?

1. At trial, plaintiffs introduced evidence indicating that the covenant not to compete had been breached in two respects.[1] First, it was alleged that the Par-

---

1. The validity of the covenant itself is not questioned. Covenants restricting competition have been upheld by this court where the loca-

tion and duration of the covenant's impact is clearly set forth and reasonable in scope. See, *Bess v. Bothman,* 257 N.W.2d 791 (Minn.1977);

rotts continued to buy scrap copper and aluminum wire from two former business contacts—Dakota Electric Association and Central Telephone Company. Second, plaintiffs contended that the Parrotts have continued to buy and sell automobile scrap and salvage.

Defendants urge that insufficient evidence was adduced to support either allegation of breach. With respect to the scrap wire purchases, defendants assert that the parties entered into a collateral oral agreement in which the Fausts specifically assented to the Parrotts' continued dealing with the two public utilities. Defendants also offered an explanation for each of the scrap auto purchases in which they were alleged to have engaged. Testimony was introduced tending to show that all but one of such purchases were made on behalf of the Parrotts' children or employees.

■ Nevertheless, the jury disbelieved defendants' testimony and other evidence and found that the Parrotts had violated their agreement not to compete. On appeal, this court must view the evidence in the light most favorable to the verdict and limit its inquiry to an assessment of whether the evidence as a whole reasonably supports the verdict. This is especially true where the resolution of a disputed fact or facts turns largely upon an evaluation of the relative credibility of witnesses whose testimonial demeanor was observed only by the jury. *Hansen v. Hansen,* 284 Minn. 1, 169 N.W.2d 12 (1969); *Don Kral Inc. v. Lindstrom,* 286 Minn. 37, 173 N.W.2d 921 (1970); *Gibeau v. Mayo,* 280 Minn. 170, 158 N.W.2d 589 (1968); 1B Dunnell, Dig. (3 ed.) §§ 388, 415(a)(b).

■ While we might not have reached the same conclusion as did the jury, under the standard of review set forth above we must affirm the finding of breach. The evidence in support of the verdict includes (1) Mr. Faust's denial, under oath, of any

collateral agreement or exception to the covenant not to compete; (2) photographs of scrap piled near the Parrotts' new residence; (3) photographs of the Parrotts' trucks hauling automobiles; and (4) the testimony of George Moe, who stated that Mr. Parrott had offered to sell him a car while the anti-competitive covenant was in effect. Accordingly, the jury verdict on the question of breach must stand.

■ 2. Defendants next contend that even if they did breach their covenant, plaintiffs failed to prove at trial that they suffered any identifiable damages as a result of such breach. As previously stated, plaintiffs' cause of action rested on the theory that the breach of defendants' covenant impaired the business goodwill of the salvage yard. In general, the damages awarded for a breach of this nature are measured by the business loss suffered as a consequence of the breach. Accordingly, plaintiffs were entitled to recover the profits they lost as a direct result of defendants' competitive activities.[2] *Peterson v. Johnson Nut Co.,* 209 Minn. 470, 297 N.W. 178 (1941); *White v. Universal Underwriters Insurance Co.,* 347 Mass. 367, 197 N.E.2d 868 (1963); 25 C.J.S., Damages, § 79d.

■ As a prerequisite to recovery, however, it was incumbent on plaintiffs to prove the *amount* of the damages they sustained. While the law most certainly does not require that damages be calculable with absolute precision, damages must nevertheless be ascertainable with reasonable exactness and may not be the product of benevolent speculation. See, *Northern Petrochemical Co. v. Thorsen & Thorshov, Inc.,* 297 Minn. 118, 211 N.W.2d 159 (1973); *Willmar Gas Co. v. Duininck,* 236 Minn. 499, 53 N.W.2d 255 (1952); 5B Dunnell, Dig. (3 ed.) § 2535. Our review of the record in this case has revealed nothing from which the jury could even begin to determine what, if any, profits were lost by the Fausts.

*Haynes v. Monson,* 301 Minn. 327, 224 N.W.2d 482 (1974); *Naftalin v. John Wood Co.,* 263 Minn. 135, 116 N.W.2d 91 (1962).

2. Contrary to plaintiffs' suggestion, the portion of the initial purchase price allocated to goodwill does not normally serve as a measure of damages. See, 38 C.J.S., Good Will, § 16.

At trial, plaintiffs introduced their 1976 tax return which showed a gross profit of approximately $67,000. Mr. Faust also testified that roughly 25 percent of his business consisted of scrap wire sales. But neither of these bits of information gives any indication of whether the Fausts lost profits because of the Parrotts' actions, and if so, to what extent such losses were incurred. Similarly, the fact that Mr. Parrott continued to deal with two former scrap suppliers provides no basis for calculating a damage award unless the actual profit from such transactions is known and it can also be demonstrated that the Fausts would have obtained these profits had the Parrotts not done so. The record is devoid of any such evidence. For this reason, we remand the case for a new trial on the question of damages only.

To guide the litigants on remand, we emphasize that plaintiffs can recover damages only if (1) the profits they lost are a direct result of defendants' competitive activities, and (2) the amount of the reduction of profits may be ascertained with reasonable certainty. With respect to these items, lost profits may be determined only by reference to the financial records of the salvage yard, both before and after its sale to the Fausts. Concerning the element of causation, we observe that a decline in profitability could be attributable to any number of factors other than defendants' breach. For example, poor management or market changes could have a marked effect on the prosperity of the salvage yard after it was purchased by the plaintiffs. Moreover, we note that plaintiffs changed the name of the salvage business after purchasing it. The company name of a going concern constitutes a integral part of the firm's goodwill; and the fact that plaintiffs changed the name of Polly's Auto Parts to Viking Auto Salvage must therefore be an important item for consideration in determining whether defendants' breach was the primary cause of any lost profits. See, 38 Am.Jur.2d, Good will, § 16.

The jury's verdict on the question of liability is affirmed. The damage award is vacated, and the case is remanded for a new trial on the amount of damages in accordance with the above-stated principles.

Remanded.