Virginia KELLY, et al., Respondents,

Kenneth Dukes, Plaintiff,

v.

CITY OF MINNEAPOLIS, et al., petitioners, Appellants.

No. C0–97–1206.

Supreme Court of Minnesota.

Aug. 5, 1999.

Rehearing Denied Sept. 7, 1999.

Aurelio GONZALEZ, Respondent,

v.

### ORDER

Jay M. Heffern, Minneapolis City Atty., Edward Backstrom, Asst. City Atty., Minneapolis, for appellants.

Larry E. Reed, Hassan & Reed, Minneapolis, for respondents.

## OPINION

STRINGER, J.

Antoinette Deyo and Virginia Kelly, respondents, were arrested by Minneapolis police officers in the early morning hours of September 29, 1991. A fracas between the appellant officers and the respondent arrestees ensued and respondents brought suit against appellants, officers Daniel Wells and David Roiger, as well as other police officers and the City of Minneapolis, alleging a wide variety of police misconduct including intentional infliction of emo-

tional distress. Following a six-week trial in Hennepin County District Court, an 81-question special verdict form was submitted to the jury requiring findings as to each of the claims. The jury found for appellant police officers on each element of every claim, but found appellants Wells and Roiger had committed intentional infliction of emotional distress although not with malice. The trial court held that appellants Wells and Roiger, as well as the City of Minneapolis, were protected from liability by official immunity because regardless of their intentional infliction of emotional distress, they had not acted with malice, citing *Johnson v. Morris,* 453 N.W.2d 31 (Minn.1990).

The court of appeals reversed in part, holding official immunity was not available because the finding of no malice was inconsistent with the finding of intentional infliction of emotional distress and therefore the absence of malice finding must be set aside. The court further held that the doctrine of official immunity did not apply to the "gratuitous cruelty" inflicted by the officers and therefore appellants were not entitled to official immunity. *Kelly v. City of Minneapolis,* 581 N.W.2d 372, 378 (Minn.App.1998). We reverse the court of appeals and reinstate the trial court order finding that appellants Wells and Roiger and the City of Minneapolis are entitled to official immunity.

Appellant Daniel Wells, a City of Minneapolis police officer, was dispatched to 2932 Humboldt Avenue North at approximately 1:30 a.m. on September 29, 1991 to investigate a report of a loud party, but upon arrival Wells could not determine from which house the noise was coming. Respondent Antionette Deyo was hosting an anniversary party for her brother and his wife that evening at her house at 2934 Humboldt Avenue North. Deyo was outside when Officer Wells arrived and approached him when she noticed that he looked confused. Wells told her that he was investigating a complaint of a noisy party, whereupon Deyo told him that she was hosting a party at 2934. Wells believed the noise was coming from Deyo's

house and asked her to accompany him to his squad car so he could give her a copy of the city's noise ordinance. Wells was unable to find a copy of the ordinance, however. When Deyo refused to give Wells her name, Wells asked her to sit in the back of the squad car while he wrote her a citation for violating the ordinance. Deyo got in the car but kept her left foot on the pavement. Wells tapped her calf with his hand and told her to move her leg into the car—Deyo then attempted to get out of the car.

Two distinct versions of what happened next were presented to the jury. Wells testified that when he put his hands on Deyo's shoulders in an attempt to push her back into the car, she attacked him by scratching behind his ear and pulling his sweater up over his eyes. He then scuffled with Deyo and pushed her to the ground but let go of her when she started screaming that she was being raped.

Deyo had a different account. She testified that she had a friend's car keys in her hand and asked Wells if she could return them as she got out of the squad car, whereupon Wells twisted her arm and choked her saying "I will put you out." A neighbor testified that she heard Wells call Deyo a "black bitch" during the scuffle, and there was disputed testimony as to whether or not Deyo's breasts were exposed as she ran into her house.

Believing that he had been assaulted, Wells called for assistance to arrest Deyo. Several squad cars responded within minutes and the responding officers included appellant David Roiger. Wells, who by then was bleeding from scratches to his neck and ear, described Deyo to his fellow officers as a black woman wearing long black braids and a black suit-coat jacket and black pants.

The officers then entered the house in search of Deyo. Roiger testified that respondent Kelly attempted to slam the door shut on the officers as they were entering and was hostile to the officers as they looked for Deyo among the party guests.

Roiger testified that he saw Deyo in the kitchen in a bear hug with her brother, and that when he asked Deyo's brother to let her go, Deyo's sister, Virginia Kelly, attacked him from behind punching his left side and the back of his head. Kelly was also wearing black that evening, but the officers testified that otherwise the two women did not look alike. In his quarrel with Kelly, Roiger received scratches on his face, neck and chest, and a cut to his hand, and Kelly sustained several injuries including a badly cut lip and a ripped earlobe. Kelly continued to resist arrest while being handcuffed and taken from the house. Kelly testified that Roiger slammed her head into the walls as he was taking her out of the house and onto the trunk of a squad car when they finally arrived on the street. Respondents also testified that Roiger called Kelly disparaging names while arresting her and taking her to the hospital—Roiger denied these claims.

Another officer in the kitchen identified Deyo from the description given by Wells and held her from behind until Wells could identify and handcuff her. Deyo did not resist arrest and was led out of the house and placed in Wells' squad car. Respondents testified that Deyo's breasts were exposed as she was being led off, transported, and booked at the jail. Wells testified that Deyo was wearing a low-cut jacket but denied that her breasts were exposed.

Respondents[1] filed suit against the City of Minneapolis, Minneapolis Chief of Police John Laux, and police officers Daniel Wells and David Roiger[2] alleging false arrest and imprisonment, assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and unauthorized use of force. Respondents also alleged violations of their state constitutional rights to due process and freedom from unreasonable searches and

seizures, racial discrimination in violation of Minn.Stat. § 363.03, subds. 4 & 6 (1992), and 42 U.S.C. §§ 1981, 1983, 1985(2) and 1988 (1988 & Supp. III 1991), violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, a pattern or practice of discrimination and constitutional violations by the Minneapolis Police Department, conspiracy to deprive respondents of their constitutional rights, and invasion of their right to privacy. The trial court granted appellants' motion for a bifurcated trial reserving for later resolution the discrimination claims against the City of Minneapolis and the chief of police pending the outcome of the first trial against the four individual officers. The trial court granted appellants' summary judgment on respondents' claim of negligent infliction of emotional distress and invasion of the right to privacy, as well as the claims brought under the Eighth Amendment, 42 U.S.C. § 1982, Minn.Stat. § 609.06, and the Minnesota Constitution.

The claims of assault, battery, intentional infliction of emotional distress, unlawful arrest, false imprisonment, excessive force, wrongful entry into Deyo's residence, conspiracy to violate respondents' constitutional rights, racial discrimination, and unreasonable delay of medical treatment were submitted to a 6–member jury. The jury was given an 81–question special verdict form, requiring findings as to whether each defendant had committed each claimed offense and, if so, whether the offense had been committed with malice. The jury found no liability for any of the four defendants on the claims of assault, battery, unlawful arrest, false imprisonment, excessive force, wrongful entry into Deyo's residence, conspiracy, discrimination on the basis of race, wrongful arrest, and denial of medical care, and that a reasonable and prudent officer in the position of Wells, Roiger and Stocke could reasonably have believed he had lawful

---

1. Party attendee Kenneth Dukes was originally a plaintiff in this action, but was dismissed from the suit prior to trial.

2. Appellants brought suit against other police officers as well, but do not appeal the jury verdict finding of no wrong doing on the part of the other officers.

authority to arrest Kelly and Deyo. The jury did however find that Wells and Roiger had intentionally inflicted emotional distress upon Deyo and Kelly respectively, although neither officer had acted with malice in the course of the intentional infliction. The jury found that Deyo had suffered a total of $82,546.00 in damages attributable solely to Wells, and Kelly suffered damages totaling $85,220.00 attributable to Roiger, each for past and future medical expenses and emotional distress, past pain, suffering and disability, and past loss of earnings for Deyo.

The trial court included in the special verdict form on an advisory basis questions relating to the claims of racial discrimination and from the jury's response, the court concluded that none of the officers had violated the Minnesota Human Rights Act. The trial court held that because appellants did not act with malice they were shielded from liability by official immunity.[3]

On review the court of appeals held that a finding of intentional infliction of emotional distress "[a]lmost invariably * * * meets the definition of malice." *Kelly,* 581 N.W.2d at 378. The court set aside the jury's finding of no malice on the basis that conduct that is so extreme and outrageous that it passes the boundaries of decency necessarily meets the definition of malice. *Id.* The court went on to hold that even though the conduct of police officers responding to a dispatch is generally discretionary, the conduct of Wells and Roger involved a "disproportionate response and gratuitous cruelty inflicted on Kelly and Deyo." *Id.* The court reversed the trial

court's ruling on applicability of the doctrine of official immunity but affirmed the ruling on the racial discrimination claims and the denial of a new trial. *Id.* at 378-79.

## I.

The first issue raised by appellants is whether the court of appeals erred in determining that there was an inconsistency between the jury's finding that Wells and Roiger intentionally inflicted emotional distress but did not act with malice, necessitating setting aside the finding of lack of malice. We held long ago that a special verdict form is to be liberally construed to give effect to the intention of the jury and on appellate review it is the court's responsibility to harmonize all findings if at all possible. *Reese v. Henke,* 277 Minn. 151, 155, 152 N.W.2d 63, 66 (1967). If the answers to the questions submitted to the jury "can be reconciled in any reasonable manner consistent with the evidence and its fair inferences," the jury verdict must be sustained. *Id.; see also Swanson v. Minneapolis Street Ry. Co.,* 252 Minn. 484, 487, 90 N.W.2d 514, 517 (1958) (reviewing court "compelled" to accept a jury verdict supported by sufficient evidence). An answer to a special verdict question should be set aside only if it is "perverse and palpably contrary to the evidence, or where the evidence is so clear as to leave no room for differences among reasonable persons." *Jacobs v. Rosemount Dodge–Winnebago South,* 310 N.W.2d 71, 76 (Minn.1981). Review is particularly limited when the jury finding turns largely upon an assessment of the relative credibility of witnesses whose tes-

---

3. The trial court relied upon *Greiner v. City of Champlin,* 27 F.3d 1346 (8th Cir.1994) in holding that official immunity was available for officers engaged in conduct constituting intentional infliction of emotional distress. *Greiner* involved facts remarkably similar to those now before the court: female partygoers attending a loud party, male police officers investigating, a donnybrook ensues leading to arrest and claims that the officers used excessive force in making the arrests, including a claim of intentional infliction of emotional distress. *Greiner,* 27 F.3d at 1349,

1355. Applying Minnesota law, the federal district court held that the plaintiffs' conclusory allegations of malice were insufficient to raise an issue of material fact and granted summary judgment for the defendants. *Greiner v. City of Champlin,* 816 F.Supp. 528, 546 (D.Minn.1993). The Eighth Circuit Court of Appeals affirmed concluding that "in light of the emotional nature of the extended period of events * * * we cannot conclude that it can be said to show malice." *Greiner,* 27 F.3d at 1355.

timonial demeanor was observed only by the jury and the trial court and the latter has approved the findings made. *Gibeau v. Mayo,* 280 Minn. 170, 175, 158 N.W.2d 589, 592 (1968).

■■■ An analysis of whether the jury's finding that appellants engaged in intentional infliction of emotional distress is inconsistent with a finding of no malice starts with the fundamentals of each element of the alleged tortious conduct. In *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428 (Minn.1983), we held that the tort of intentional infliction of emotional distress requires proof that: (1) the conduct complained of was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; (4) and the distress suffered was severe. *Id.* at 438–39. The conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* at 439 (citations omitted). While the conduct must be outrageous however, it need not be illegal or be accompanied by another wrongful or illegal act. *See id.* at 438 (no underlying tort required to prove intentional infliction of emotional distress). A comment accompanying the Restatement of Torts, adopted by this court in *Hubbard,* 330 N.W.2d at 438, notes that intentional infliction of emotional distress is "a separate and distinct basis of tort liability, without the presence of the elements necessary to any other tort, such as assault, battery, false imprisonment, trespass to land, or the like." Restatement (Second) of Torts, § 46, cmt. b (1965).

■■■ Malice, on the other hand, requires proof of a wrongful invasion of the rights of another. In *Rico v. State,* 472 N.W.2d 100 (Minn.1991), we held that malice "means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Id.* at 107 (quoting *Carnes v. St. Paul Union Stockyards Co.,* 164 Minn. 457, 462,

205 N.W. 630, 631 (1925)). Malice in the context of official immunity means intentionally committing an act that the official has reason to believe is legally prohibited. *State by Beaulieu v. City of Mounds View,* 518 N.W.2d 567, 571 (Minn.1994).

In the exercise of our responsibility on appellate review to determine if there is any rational basis to harmonize the jury's findings and after careful review of the record, we conclude the jury could have believed that appellants committed intentional infliction of emotional distress but acted without malice under at least two theories. First, the jury could have found that in the brawl leading to the arrests the conduct of appellants was reckless rather than intentional, and the lack of intent would preclude a finding of malice under the jury's instructions; or, the jury could have found that appellants' behavior, although outrageous, was justified under the circumstances and therefore could not be malicious.

Considering the substantial evidence provided to the jury, the number of witnesses who testified, often giving totally inconsistent accounts of the melee, and the detailed findings of the jury favorable to appellants, with the sole exception of the intentional infliction of emotional distress, either basis for rationalizing the verdict is reasonable. The first theory is supported by appellants' testimony that the scene was tense and the police officers were concerned for their own safety and acted accordingly. This testimony also supports the second theory, as does the jury finding that appellants did not use excessive force in making the arrests and that they reasonably believed that they had lawful authority to do so.

■■■ As our review is limited to whether a reasonable jury *could* have rendered the verdict it did given the evidence presented, and we conclude that it could, we hold that the court of appeals erred in vacating the jury's finding of absence of malice.[4]

4. The dissent apparently does not disagree

with our conclusion that the verdict can be

## II.

We next turn to the question of whether the conduct of appellants, found by the jury to constitute intentional infliction of emotional distress, is subject to official immunity. In general, a public official charged by law with duties calling for the exercise of discretion is not personally liable to an individual for damages. *See Susla v. State,* 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976). "Official immunity" is intended to free public officials from the fear of liability that might inhibit them from discharging their discretionary duties. *Rico,* 472 N.W.2d at 107. There are two exceptions to the general rule precluding liability: where the duty performed is ministerial not discretionary, or where the official acts with malice. *See Elwood v. Rice County,* 423 N.W.2d 671, 677 (Minn.1988).[5] The jury concluded that the police conduct here was not malicious, and we have ruled that this finding is not inconsistent with its finding of intentional infliction of emotional distress; therefore respondents' claim for damages can survive immunity only if the conduct was ministerial and not discretionary.

Ministerial duties are "absolute, certain, and imperative, [and] involv[e] merely execution of a specific duty arising from fixed and designated facts." *Cook v. Trovatten,* 200 Minn. 221, 224, 274 N.W. 165, 167 (1937) (quoting *People v. May,* 251 Ill. 54, 57, 95 N.E. 999, 1000 (Ill.1911)). A ministerial duty is simple and definite, leaving nothing to the discretion of the official. *Id.*

While official duties of police officers are broadly considered discretionary, *see, e.g., Elwood,* 423 N.W.2d at 678–79 (entering home and detaining suspects are the kind of actions meant to be protected by official immunity); *Johnson v. Morris,* 453 N.W.2d 31, 42 (Minn.1990) (shooting tires of fleeing vehicle and handcuffing suspect "classic case of that type of exercise of discretion giving rise to official immunity" even if the actions constituted a battery); *Pletan v. Gaines,* 494 N.W.2d 38, 41 (Minn.1992) (decision to engage in high-speed chase of criminal suspect discretionary action entitled to official immunity), official immunity "is not intended to shield police brutality." *Elwood,* 423 N.W.2d at 679. The test for determining the reasonableness of a police officer's use of force is whether an objectively reasonable police officer would have believed that the force used was lawful in light of clearly established law and the information the officer possessed at the time of the challenged activity. *Baker v. Chaplin,* 517 N.W.2d 911, 916 (Minn.1994) (citing *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

Turning once again to the jury findings, with the exception of intentional infliction of emotional distress, Wells and Roiger were exonerated of every tort claim asserted against them—assault, battery, unlawful arrest, false imprisonment, excessive force, wrongful arrest, denial of medical care, and wrongful entry into Deyo's residence. We conclude on the basis of these findings that respondents' claim of police brutality was implicitly if not explicitly rejected by the jury.[6]

rationalized on these bases, but is troubled by the jury's finding that the two officers did intentionally inflict emotional distress—indicating that the jury did not reject all of respondents' contentions. We have no disagreement on this point, but it is our responsibility on review to *rationalize* the jury's verdict, if reasonably possible.

5. Whether an action is discretionary or ministerial is a question of law for the court, but whether an officer acted maliciously is usually a question of fact for the jury. *See Elwood,* 423 N.W.2d at 673, 679.

6. The dissent cites a variety of lurid allegations made by respondents involving offensive language and exposure of Deyo's breasts during the arrest as conduct surely not qualifying for immunity because of its despicable nature. If the jury had found these allegations to have been proven, the dissent would no doubt be correct, but the jury's findings clearly indicate these allegations were rejected. We cannot read into the findings something that is not there.

Respondents argue however, that appellants' actions in arresting respondents were not discretionary but were ministerial, citing extensive regulations relating to police conduct. While it is true that police conduct is indeed guided by a variety of regulations as well as case-developed law and legislative enactments, the conduct of police officers in responding to a dispatch or making an arrest involves precisely the type of discretionary decisions, often split-second and on meager information, that we intended to protect from judicial second-guessing through the doctrine of official immunity. *See, e.g., Elwood,* 423 N.W.2d at 678–79. The circumstances surrounding the arrest of a suspect do not involve the "fixed and designated facts" and "absolute, certain and imperative" duties of a ministerial act. Each situation is unique and requires the exercise of judgment by the officer based upon the objective circumstances of the moment. Appellants' conduct clearly falls within the category of discretionary activity for purposes of official immunity.

### III.

We reverse the court of appeals and reinstate the jury finding that appellants acted without malice when they engaged in intentional infliction of emotional distress, and that in the absence of malice, official immunity is applicable to the conduct of public officials performing discretionary duties.[7]

Reversed.

GILBERT, Justice (dissenting).

I respectfully dissent. I believe that the court errs first in affirming a perverse verdict and second in granting appellants immunity for actions that clearly exceeded the bounds of their discretionary authority. I would remand the case for a new trial.

### I.

Respondents in this case alleged that appellants were physically abusive toward them, called them racist and sexist names, unlawfully arrested them, and exposed one of the respondent's breasts for an extended period of time. The jury specifically found that the officers did not use excessive force, that the officers did not act discriminatorily, and that the arrests of respondents were lawful and reasonable. Based on these findings, the trial court further found that respondents did not violate the Minnesota Human Rights Act, Minn.Stat. § 363.03, subd. 4 (1998). These findings indicate a clear disbelief of each of respondents' allegations.

However, the jury did not reject all of respondents' claims. Instead, the jury found that appellants had intentionally inflicted emotional distress upon respondents. To find that appellants engaged in intentional infliction of emotional distress, the jury must have believed at least some of respondents' allegations. Thus, the specific findings of no wrongdoing are perverse when considered in contrast to the finding of intentional infliction of emotional distress.

The jury's answers to the special verdict form are wholly inconsistent, and clearly indicate a compromise verdict. Where a jury's verdict is based on compromise rather than on the law as instructed by the trial court, a new trial should be ordered. *See, e.g., Schore v. Mueller,* 290 Minn. 186, 189–190, 186 N.W.2d 699, 702 (1971); *Kloos v. Soo Line R.R.,* 286 Minn. 172, 176, 176 N.W.2d 274, 277 (1970). Accordingly, I would reverse and remand this case for a new trial.

### II.

The court next holds that appellants' actions were discretionary and the claims for intentional infliction of emotional dis-

---

**7.** Respondents have filed a motion to strike portions of appellants' brief, appendix and supplemental record. Because we have not considered any of the contested material in reaching our decision, we need not respond to respondents' allegations that the material is not properly before us.

tress are subject to appellants' official immunity. This holding is based in part on the jury's finding that appellants did not act with malice. Thus, the court grants immunity for conduct that is "utterly intolerable" and "so atrocious that it passes the boundaries of decency." *Haagenson v. National Farmers Union Prop. & Cas. Co.*, 277 N.W.2d 648, 652 n. 3 (Minn.1979) (defining intentional infliction of emotional distress).

Intentional infliction of emotional distress requires a finding that the defendant recklessly or intentionally engaged in "extreme and outrageous" conduct "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* The conduct must have resulted in emotional distress "so severe that no reasonable man could be expected to endure it." *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 439 (Minn.1983) (quoting Restatement (Second) of Torts § 46, cmt. j (1965)). The commentary to the Restatement emphasizes the high threshold standard of proof required of a complainant. *See* Restatement (Second) of Torts § 46, cmt. j. A finding of intentional infliction of emotional distress is implicitly void of any legal justification, as legally justified behavior is always tolerable under the circumstances that justify it.

Malice has a much lower standard of proof than that required for intentional infliction of emotional distress. It requires a finding of "nothing more than the intentional doing of a wrongful act without legal justification or excuse." *Rico v. State*, 472 N.W.2d 100, 107 (Minn.1991). Yet, while a finding of intentional infliction of emotional distress can be based on either reckless or intentional conduct, a finding of malice requires a finding of intentional conduct. *See id.*

The court's rationale in its attempt to reconcile the contradictory findings of intentional infliction of emotional distress and the absence of malice is based on two possibilities: (1) the jury determined that appellants' behavior was reckless rather than intentional, or (2) the jury determined that the police were legally justified in their actions. If the jury's findings were, as the court implies, based on the "brawl," the court's reconciliation of these findings may have been appropriate. However, this court is in no position to conclude that the jury's finding of intentional infliction of emotional distress was based on the physical altercation when the jury specifically found that appellants did not use excessive force or commit assault or battery. Instead, the finding of intentional infliction of emotional distress could have been based on the use of racist and sexist names or the exposure of one of the respondent's breasts, although again we cannot so conclude due to the multiple contradictory findings.

The court's attempt to reconcile the intentional infliction of emotional distress finding by determining that appellants' behavior in the brawl was reckless rather than intentional is improper. A person does something intentionally if he acts "purposely, and not accidentally," or "if he desires to cause consequences of his act or he believes consequences are substantially certain to result." Black's Law Dictionary 810 (6th ed.1990). Undoubtedly, calling an individual derogatory racist and sexist names is intentional rather than reckless. *See City of Minneapolis v. Richardson*, 307 Minn. 80, 89, 239 N.W.2d 197, 203 (1976). Exposing a handcuffed suspect's breasts for an extended period of time after being requested to cover her could also be considered intentional. A "reckless brawl" does not justify such intentional and malicious behavior, and does not remove all bounds of police behavior.

The court's attempt to reconcile the verdict by assuming that the jury determined that appellants were, under the circumstances, legally justified in their behavior is similarly flawed. No officer could believe himself to be legally justified in calling a suspect such derogatory racist and sexist names. "The use of [derogatory name-calling] has no place in the civil

treatment of a citizen by a public official." *Richardson*, 307 Minn. at 89, 239 N.W.2d at 203. It is similarly implausible that appellants believed themselves legally justified in arresting, transporting, and booking a suspect while her breasts were exposed, despite repeated requests to cover her.

I do not intend to imply that we can actually ascertain why the jury answered the special verdict form the way it did. Any factual conclusion by us regarding the basis for the jury's finding of intentional infliction of emotional distress would itself be inconsistent with the jury's inconsistent findings, and thus would be inappropriate. However, the court in this case concludes that the jury's finding of intentional infliction of emotional distress was based solely on the physical altercation, a fact contradictory to the jury's findings of no excessive force, assault, or battery. The court of appeals similarly erred in reversing the jury's finding of no malice and concluding that the finding of intentional infliction of emotional distress was based on the use of racist and sexist names and the extended exposure of respondent's breasts, a fact contradictory to the jury's finding of no discrimination. Just as it is improper to conclude that the jury based its finding of intentional infliction of emotional distress on the allegations of name-calling and exposure, it is also improper for this court to imply that the jury's finding was based solely on the physical altercation. Instead, there is no way to justify either conclusion based on the jury's inconsistent findings.

The court's conclusion that the officers are entitled to official immunity for their actions because the jury found that they acted without malice also avoids our traditional official immunity analysis. "The starting point for analysis of an immunity question is identification of 'the precise governmental conduct at issue.'" *Gleason v. Metropolitan Council Transit Ops.*, 582 N.W.2d 216, 219 (Minn.1998) (quotation omitted). As discussed above, because of the multiple inconsistent findings, it is *impossible* to determine on what conduct the jury based its finding of intentional inflic-

tion of emotional distress. The court concludes that official immunity is appropriate for appellants' actions during the physical altercation, because the jury may have believed the conduct to be legally justified or reckless rather than intentional. However, several of the allegations in this case are certainly not the type of conduct intended to be covered by official immunity: requiring a suspect to spend a substantial amount of time with her breasts exposed in public, and calling suspects racist and sexist names. The racist and sexist names that were allegedly used have no place in police work and are "fighting words" not covered by any First Amendment rights. *See Richardson*, 307 Minn. at 89, 239 N.W.2d at 203; *see also Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

The doctrine of official immunity was designed to "protect[ ] public officials from the fear of personal liability that might deter independent action and impair effective performance of their duties." *Elwood v. Rice County*, 423 N.W.2d 671, 678 (Minn.1988). Official immunity "protects from personal liability a public official charged by law with duties that call for the exercise of judgment or discretion unless the official is guilty of a wilful or malicious wrong." *Rico*, 472 N.W.2d at 106–07 (citing *Elwood*, 423 N.W.2d at 677). Official immunity is a doctrine well-grounded in reason: it allows police officers to perform an effective and efficient job with necessary force without being subject to second-guessing of their split-second decisions. *See Elwood*, 423 N.W.2d at 678–79.

An officer's conduct involving racial and gender bias is, by its very nature, malicious conduct. This conduct has never been shielded by the doctrine of official immunity. In order for official immunity to protect public officials, the officials, at the time of the conduct, must not have had "reason to know that the challenged conduct [was] prohibited." *See Rico*, 472 N.W.2d at 107. There can be no doubt that a police officer knows that the use of

racist and sexist names and the exposure of a suspect's breasts throughout transport and booking are prohibited.

Granting police officers official immunity for engaging in such conduct does nothing to further their ability to effectively perform their duties. The court attempts to justify its granting of official immunity through "appellants' testimony that the scene was tense and the police officers were concerned for their own safety and acted accordingly." However, concern for one's safety does not justify such behavior. Quite the contrary, such name-calling and demeaning actions in an already tense situation can only serve to escalate the existing conflict. Accordingly, the use of such names by police officers has no place in governmental conduct. *See Richardson,* 307 Minn. at 89, 239 N.W.2d at 203. Such conduct is wholly inappropriate, is irrelevant to the performance of the official duties of a police officer, and should never be condoned as "discretionary conduct" shielded by official immunity.

I would remand this case for a new trial. Furthermore, should the new trial result in a finding of intentional infliction of emotional distress as a result of the name-calling and exposure, I would hold that the doctrine of official immunity is not applicable to such acts.

PAGE, Justice (dissenting).

I join in the dissent of Justice Gilbert.