Larry J. WELLE, Respondent,

v.

Shannon J. PROZINSKI, Respondent.

William PROZINSKI, Respondent,

v.

Donald ASKREN, Appellant.

No. 46892.

Supreme Court of Minnesota.

Oct. 14, 1977.

Gordon Rosenmeier and John E. Simonett, Little Falls, for appellant.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and James F. Roegge, Minneapolis, for Welle.

Shannon J. Prozinski, pro se.

Rodger J. Johnson, Long Prairie, for Wm. Prozinski.

Heard before TODD, YETKA and SCOTT, JJ., and considered and decided by the court en banc.

TODD, Justice.

Larry Welle suffered injuries while a passenger in an automobile operated by Shannon J. Prozinski. Shannon had purchased the vehicle from Donald Askren under a type of conditional sales agreement. Payment for the vehicle had been made, but the formalities of transferring the certificate of title to Shannon had not been completed prior to the date of the accident. The jury determined that Shannon was the owner of the vehicle at the time of the accident and exonerated Askren. On post-trial motion, the trial court found Askren vicariously liable for Welle's injuries as a matter of law, relying in part on the so-called Motor Vehicle Certificate of Title Act. Minn.St. 168A.10. We reverse and reinstate the jury verdict.

Donald Askren moved from Cincinnati, Ohio, to Minnesota in 1969. Askren had been engaged in the auto-body-shop business in Ohio, and in April 1971, he opened his own body shop in Little Falls, Minnesota. In the fall of 1971, Askren returned to Cincinnati and acquired a used Mercury Cougar which he brought back to Minnesota. The State of Ohio issued a certificate of title for the vehicle. Upon his return to Minnesota, Askren was able to obtain a registration card for the licensing of the vehicle but not a certificate of title.[1] He was told that "Minnesota wasn't issuing title cards yet, they were still working on the registration card situation."

In the fall of 1972, Askren secured a loan from Thorp Loan and Thrift Company in Little Falls and pledged the Cougar as collateral for the loan. Thorp perfected its security interest in the automobile, and the first certificate of title in Minnesota was issued for the Cougar on November 15, 1972. The certificate of title was forwarded to Thorp, naming Askren as the owner and Thorp as the first secured party.

On January 23, 1973, Askren sold the Cougar to 18-year-old Shannon J. Prozinski. The transfer was evidenced by a bill of sale made out to Shannon's father, William Prozinski, with the understanding that Shannon was the owner, in fact, of the automo-

---

1. For a discussion of the problems encountered when motor vehicles are transferred between parties and moved from one state to another, see, Note, 9 Creighton L.Rev. 373.

bile. The purchase price of the automobile was $400. Shannon made a $200 downpayment and took possession of the car the same day. The balance of the bill was to be "worked off" at Askren's body shop by Shannon at the rate of $25 per week.

On the next business day, Askren telephoned the manager of Thorp to request the substitution of a Dodge automobile for the Cougar as collateral on his loan. Askren testified that he informed the manager that he had "sold the car, and * * * wanted them to transfer it to the Prozinskis."

In March 1973, William Prozinski made the final payment on the Cougar for which Askren gave him a receipt which stated that it evidenced payment for "Cougar payoff and plates." On April 1, 1973, Askren took the registration card to the courthouse in Little Falls and purchased license plates for the vehicle, advising the license registration clerk that the car had been sold and the certificate of title should be transferred. Askren then gave the plates to the Prozinskis.

On May 28, 1973, Shannon, while operating the Cougar, was involved in a one-car accident in which Welle, as passenger in the vehicle, was seriously injured. Welle was hospitalized for an extended period of time, and as a result of the accident, he sustained 25-percent permanent partial disability of his back. Two months after the accident, Askren appeared at the Thorp office and executed the owner's assignment of title on the certificate of title. Thereafter, Askren, whose name appeared on the certificate as the owner of the vehicle, delivered a properly executed certificate of title to Shannon Prozinski.

Welle commenced an action for damages, alleging that Shannon operated the vehicle in a negligent manner and claiming that either William Prozinski or Askren, as the owner of the Cougar on the date of the accident, was vicariously liable for his injuries. At the close of plaintiff's case, the court dismissed the action against William Prozinski. The question of who was the owner of the vehicle on the date of the accident was submitted to a jury by special interrogatories. Over objection of plaintiff's counsel, instructions were given that the record of ownership appearing on the certificate of title was prima facie evidence of ownership of the vehicle which could be rebutted by extrinsic evidence concerning the vehicle transaction. The jury found Shannon to be the owner of the automobile and thereby also determined that Askren was not vicariously liable for Welle's injuries.[2]

Welle thereafter filed a motion for judgment notwithstanding the verdict, requesting the court to specifically amend the jury finding and to hold as a matter of law that Askren was the owner of the automobile on the date of the accident. Askren then made a motion for a new trial if Welle's motion was granted by the court. The trial court granted plaintiff's motion, relying in part upon Minn.St. 168A.10,[3] and concluding that Askren was the owner of the automobile on the date of the accident as a matter of law. Askren's motion for a new trial was denied by the trial court.

The primary issue presented on appeal is whether an automobile owner, who fails to comply with the provisions of § 168A.10 of the so-called Motor Vehicle Certificate of Title Act, may introduce evidence to prove that he is not the owner of the automobile and therefore not liable by reason of Minn.St. 170.54 of our so-called Safety Responsibility Act for damages resulting from the vehicle's operation by another individual. Askren also raises issues relating to a

---

**2.** The jury's specific answers to the special interrogatories were as follows:

"1. Was Shannon J. Prozinski negligent? Yes

"2. If he was, was his negligence a direct cause of injury to Larry J. Welle? Yes

"3. Who was the owner of the 1967 Mercury on May 28, 1973? (Shannon Prozinski)

"4. Larry J. Welle sustained damages in the sum of $40,000.00."

**3.** In enacting Minn.St. 168A.10, the legislature adopted, almost verbatim, a section of the Uniform Motor Vehicle Certificate of Title and Anti-theft Act. See, 11 Uniform Laws Annotated, § 14, p. 441.

purported release given by Welle to Shannon and the excessiveness of the damages.

The principal issue in this case presents this court with a matter we have not previously considered. In 1971, the legislature adopted § 168A.10, which was intended to cover certificate of title problems arising when an automobile is transferred by one party to another. Section 168A.10 provides:

"Subdivision 1. If an owner transfers his interest in a vehicle other than by the creation of a security interest, he shall at the time of the delivery of the vehicle execute an assignment and warranty of title to the transferee in the space provided therefor on the certificate or as the department prescribes, and cause the certificate and assignment to be mailed or delivered to the transferee or to the department.

"Subd. 2. Except as provided in section 168A.11, the transferee shall, promptly after delivery to him of the vehicle, execute the application for a new certificate of title in the space provided therefor on the certificate or as the department prescribes, and cause the certificate and application to be mailed or delivered to the department.

"Subd. 3. Upon request of the owner or transferee, a secured party in possession of the certificate of title shall, either deliver the certificate to the transferee for delivery to the department, or upon receipt from the transferee of the owner's assignment, the transferee's application for a new certificate and the required fee, mail or deliver them to the department. The delivery of the certificate does not affect the rights of the secured party under his security agreement.

"Subd. 4. If a security interest is reserved or created at the time of the transfer, the certificate of title shall be retained by or delivered to the person who becomes the secured party, unless a prior secured party is entitled to it, and the parties shall comply with the provisions of section 168A.18.

"Subd. 5. Except as provided in section 168A.11 and as between the parties, a transfer by an owner is not effective until the provisions of this section have been complied with; however, an owner who has delivered possession of the vehicle to the transferee and has complied, or within 48 hours after such delivery does comply, with the provisions of this section requiring action by him is not liable as owner for any damages resulting from operation of the vehicle after the delivery of the vehicle to the transferee."

Of particular interest is § 168A.10, subd. 5, which appears to place the duty of changing the ownership status appearing on the certificate upon the seller-transferor. The trial court employed this particular provision of the statute in conjunction with § 170.54,[4] to hold that Askren, as owner of the Cougar automobile on the date of the accident, was vicariously liable for Welle's injuries and subsequent damages. The trial court reasoned that Askren's failure to comply with the provisions of § 168A.10, by not executing an assignment of title to the buyer-transferee, Shannon Prozinski, placed him within § 168A.10, subd. 5, as the owner of the vehicle.[5] In reaching the determination that Askren was the owner of the vehicle on the date of the accident, the trial court viewed his failure to comply with the provisions of § 168A.10, subd. 5, as creating an irrebuttable presumption that he

4. Minn.St. 170.54, which is commonly referred to as the Safety Responsibility Act, provides: "Whenever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

5. The word "owner" is defined in Minn.St. 168A.01, subd. 13, as—"* * * a person, other than a secured party, having the property in or title to a vehicle. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person, but excludes a lessee under a lease not intended as security."

"owned" the automobile for purposes of § 170.54.

Prior to the enactment of § 168A.10, the fact that an individual's name appeared on the certificate of title as the owner of the vehicle was prima facie evidence of his ownership of the automobile. This presumption of ownership was rebuttable rather than conclusive on the issue of ownership. Thus, the parties were permitted to introduce evidence of the facts surrounding a particular transaction to demonstrate that the title to the vehicle was, in fact, possessed by another party. See, *Gross v. Powell,* 288 Minn. 386, 181 N.W.2d 113 (1970); *Frye v. Anderson,* 248 Minn. 478, 80 N.W.2d 593 (1957).

While this court has not previously determined the effect of § 168A.10, our research indicates that the State of Wisconsin has a statute which contains almost identical language and provisions. In *Knutson v. Mueller,* 68 Wis.2d 199, 228 N.W.2d 342 (1975), the Wisconsin Supreme Court interpreted its statute as precluding the individual whose name appears on the certificate as the owner from introducing evidence to rebut the presumption of ownership for purposes of vicarious liability. Thus, it appears that the Wisconsin Supreme Court now views the facts appearing on the certificate of title as creating an irrebuttable presumption of ownership because of the presence of statutory language similar to § 168A.10, subd. 5. Based on legislative history and case law in Minnesota, we decline to reach this result.

Vicarious liability of an owner of a motor vehicle for any damages arising from its operation by a third party was established in Minnesota under § 170.54. This statute and subsequent case law interpreting the meaning of its language as allowing the introduction of evidence to rebut the presumption of ownership were in existence when § 168A.10 was adopted by the legislature. See, e. g., *Gibeau v. Mayo,* 280 Minn. 170, 158 N.W.2d 589 (1968). Minn.St. 645.-17(4) provides:

"When a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language * *."

Furthermore, the primary objective of this court when interpreting the language of a particular statute is " * * * to ascertain and effectuate the intention of the legislature." Minn.St. 645.16.

Given the fact that § 168A.10 was enacted to alleviate the various problems encountered in transferring automobiles under our prior motor vehicle registration system and given our obligation to effectuate the provisions of both §§ 168A.10 and 170.54, as construed by this court, we conclude that extrinsic evidence may be introduced by a party to rebut the presumption of ownership created when his name appears as the owner of a vehicle on the certificate of title. We interpret the language of § 168A.10, subd. 5, as relieving the seller-transferor, who complies with the transfer provisions of this statute, of any possibility of vicarious liability under § 170.54. Thus, consistent with this interpretation, compliance with the provisions of § 168A.10 establishes incontrovertible evidence that ownership of the motor vehicle passed from the seller-transferor to the buyer-transferee and thereby eliminates any possible liability as "owner" of the automobile under § 170.54. However, a seller-transferor who fails to comply with the transfer provisions of § 168A.10 is not precluded from presenting extrinsic evidence, apart from the notation of ownership appearing on the certificate of title, concerning the actual facts of the transaction in order to avoid vicarious liability under our so-called Safety Responsibility Act. This result is consistent with our past practices of allowing an individual to rebut the presumption of consent created by § 170.54. Further, if there is to be a change in the vicarious liability law of this state as it presently exists, it should be directly addressed by the legislature and not infringed upon by other statutory provi-

sions which do not directly consider the problem.

Having disposed of the case on the above issue, we need not consider other issues raised by this appeal. The matter is remanded to the trial court with instructions to reinstate the jury verdict and enter judgment for the appellant, Donald Askren.

Reversed and remanded.

WAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.