**BADGER STATE MUTUAL CASUALTY COMPANY, Appellant,**

v.

**Randy J. SWENSON, Matthew R. Ashley, Terri Jenner, Pauline Wallraff, et al., Respondents.**

No. C4–86–2055.

Court of Appeals of Minnesota.

May 5, 1987.

Marie A. Darst, Jardine, Logan & O'Brien, St. Paul, for Badger State Mut. Cas. Co.

Michael A. Welch, Jergens, Herbert, Tennis, Welch & Humphreys, Forest Lake, for Swenson.

Mary M. Bope, Murnane, Conlin, White, Bradt & Hoffman, St. Paul, for Ashley.

Theodore K. Abe, Minneapolis, for Jenner.

James R. Tschida, St. Paul, for Wallraff, et al.

Heard, considered and decided by CRIPPEN, P.J., and WOZNIAK and STONE,* JJ.

## OPINION

STONE, Judge.

This appeal is from a declaratory judgment entered in favor of the insured, re-

---

* Acting as judge of the Court of Appeals by ap- pointment pursuant to Minn. Const. art. 6, § 2.

spondent Randy Swenson, finding appellant Badger State Mutual had a duty to defend him in a negligence action brought by respondents Pauline Wallraff and Steven Heller following an automobile accident. We affirm.

## FACTS

Respondent Randy Swenson was insured by appellant Badger State Mutual. He listed two automobiles on his policy. Swenson was a self-employed insurance salesman who also dealt in used cars, although not licensed to do so.

On June 22, 1983, Swenson sold a Pinto owned by a friend, Dan Stankevitz, to respondent Terri Jenner. Jenner did not have the entire agreed-on price in cash, so she offered her Maverick as partial payment.

Stankevitz told Swenson to sell the Pinto for whatever he could get. He did not promise him a commission, although Stankevitz did take Swenson and his wife to dinner. Stankevitz did not authorize Swenson to accept a used car in exchange for the Pinto, nor did he authorize Swenson to warranty the car.

Swenson agreed with Jenner to accept the Maverick as partial payment, intending to "junk" it and turn the salvage value over to Stankevitz as part of the cash payment. He told respondent Matt Ashley, who was present during the sales transaction, to drive it to the junk yard. On the way, Ashley was involved in the collision with respondent Heller's car, driven by respondent Wallraff.

Jenner presented Swenson with the certificate of title to the Maverick. Swenson signed the attached "Recorded Owner(s) Record of Sale," which Jenner tore off the certificate and retained. Swenson kept the certificate. This slip was signed in Swenson's own name, and listed his address. Swenson similarly turned over to Jenner the certificate of title to Stankevitz's Pinto.

After the accident, Swenson had the Maverick taken to the junk yard. There, Swenson wrote "junk" on the certificate of title and gave it to the junk dealer. He turned the money over to Stankevitz.

Swenson did not report the accident or his temporary possession of the Maverick to Badger State. He testified he usually did list the vehicles he acquired for resale with his insurer. He admitted, however, that another car bought around the same time was also not listed.

Swenson's policy with Badger State included a "newly acquired automobile" clause providing coverage for

an automobile, ownership of which is acquired by the named insured or his spouse * * *, if (i) * * * the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (ii) the named insured or such spouse notifies the company within 30 days following such delivery date * * *.

The trial court found that Swenson was the "owner" of the Maverick on June 22, 1983, and that the insurance policy provided him an automatic 30 days' coverage on that car as a "newly acquired automobile."

## ISSUES

1. Did the trial court err in concluding Randy Swenson was the owner of the vehicle?

2. Did the trial court err in concluding Swenson was covered under the "newly acquired automobile" clause of the policy?

## ANALYSIS

### I.

The Certificate of Title Act requires an owner to sign and deliver the certificate of title to the buyer. Minn.Stat. § 168A.10, subd. 1 (1986). Jenner complied with this requirement. She thus provided "incontrovertible evidence" that ownership had passed. *Welle v. Prozinski*, 258 N.W.2d 912, 916 (Minn.1977). The Act provides:

[A]n owner who has delivered possession of the vehicle to the transferee and has complied * * * with the provisions of this section requiring action by the owner is not liable as owner for any damages

resulting from operation of the vehicle after the delivery of the vehicle * * *. Minn.Stat. § 168A.10, subd. 5 (1986).

■ Badger State contends that Swenson may rebut the presumption of ownership arising from the certificate of title and "Recorded Owner(s) Record of Sale." *See BLC Ins. Co. v. Vivent,* 359 N.W.2d 315, 317 (Minn.Ct.App.1984). Swenson, however, had possession and use of the vehicle as well as the certificate of title. *Cf. Welle v. Prozinski,* 258 N.W.2d at 913 (transferee not named on the certificate of title but in possession under a bill of sale found to be the owner).

Badger State contends Swenson was not a party to the transaction because he disclosed his principal, Stankevitz, to Jenner. Restatement (Second) of Agency § 320 (1958). Badger argues Swenson was merely an agent who acquired no interest in the automobile. Swenson, however, signed the certificate of title in his own name, not in that of Stankevitz. Moreover, he had no authorization from Stankevitz to accept the Maverick as a trade-in. *See* Restatement (Second) of Agency § 65(1) (1958) (unless otherwise agreed, authority to sell entails only authority to sell for money or the "customary medium of payment"). He also lacked authority to give the 30–day warranty he gave Jenner. *See* Restatement (Second) of Agency § 63 (1958) (agent has authority only to give warranties usually given in the transaction).

Stankevitz is not a party to this action or the personal injury action and did not testify. Whatever the details of his relationship with Swenson, however, Swenson's interest in the vehicle was sufficient to find ownership. *See Quaderer v. Integrity Mutual Insurance Co.,* 263 Minn. 383, 388, 116 N.W.2d 605, 609 (1962) (the term "ownership" in a "newly-acquired automobile" clause has a broader meaning than legal title).

## II.

■ Badger State contends Swenson's failure to notify it of his acquisition of the automobile within 30 days defeats his claim to coverage. The trial court concluded the

"newly acquired automobile" clause provided automatic coverage, i.e., coverage over the 30–day notice period even without notice to the insurer. We agree.

The supreme court in *Quaderer v. Integrity Mutual Insurance Co.,* 263 Minn. 383, 390, 116 N.W.2d 605, 610 (1962) indicated there is a period of "automatic coverage":

Coverage of the [newly-acquired vehicle] is, by its terms, properly characterized as automatic coverage and several cases now hold that no notice whatsoever need be given where a coverage question arises during the period in which notice is required to be given.

(Footnote omitted.)

This is the only Minnesota statement on the issue. Courts in other jurisdictions have held that the 30–day notice requirement is a condition subsequent, not affecting coverage during the notice period. Annot., 34 A.L.R.2d 943, (1954 & Supp.1986). Cases cited by Badger State involve continuing duties of notification to which no time limit applies. *See Kashmark v. Western Ins. Companies,* 344 N.W.2d 844 (Minn.1984) (insured's duty to notify insurer of change in vehicle ownership within the family or of son's residence outside the household); *Tollefson v. American Family Insurance Co.,* 302 Minn. 1, 226 N.W.2d 280 (1974) (daughter's residence outside insured's household).

## DECISION

The trial court did not err in concluding Swenson was the owner of the vehicle or that he was covered under the policy.

Affirmed.