CAROUSEL AUTOMOBILES, INC., Plaintiff,

v.

Edward GHERITY, defendant and third-party plaintiff, Respondent,

K.L. Daniels, a/k/a Kevin L. Daniels, third-party defendant, Appellant (C3–93–1059), Respondent (C7–93–1078),

Bill Kaye, a/k/a William Kaye, et al., Third–Party Defendants,

Western Surety Co., third-party defendant, Appellant (C7–93–1078).

Nos. C3–93–1059, C7–93–1078.

Court of Appeals of Minnesota.

Feb. 1, 1994.

Review Granted March 31, 1994.

John S. Schomburg, Carlson Center, Minnetonka, for Edward Gherity.

Mark A. Olson, Burnsville, for K.L. Daniels.

Jeannice M. Reding, Minneapolis, for Western Surety Co.

Considered and decided by FORSBERG, P.J., and LANSING and NORTON, JJ.

## OPINION

NORTON, Judge.

Daniels filled out and signed a form in which he listed himself as owner of a vehicle, warranted proper title to the vehicle, and gave an accurate reading of the odometer.

When the vehicle turned out to be stolen, the trial court held Daniels liable to the buyer due to the warranty of title he had made in the form. Daniels and Western Surety Co. argue on appeal that the form, an odometer disclosure form, did not create any warranty of title. We disagree and affirm.

## FACTS

Appellant K.L. Daniels, a licensed used car dealer, negotiated the sale of a 1987 Cadillac to William Kaye. Kaye was in possession of a 1972 Mercedes that he wanted to trade in to Daniels for the Cadillac. Daniels refused to take the Mercedes as a trade-in formally, but he agreed to list the Mercedes as a "trade-in" on Kaye's paperwork for the purchase of the Cadillac in order to minimize Kaye's sales tax liability. When Daniels refused the trade-in, Kaye ran an ad and arranged to sell the Mercedes to respondent Edward Gherity.

On February 28, 1989, Kaye, Gherity, and Daniels met at the Department of Motor Vehicles in Prior Lake to transfer title and exchange payment on the two vehicles. Before that time, Gherity had never met Daniels. Gherity believed that he was purchasing the car from Kaye. He also understood that Kaye was purchasing a Cadillac from Daniels and the sale of that vehicle and the sale of the Mercedes were somehow connected. Gherity gave Kaye a cashier's check for $12,500 to pay for the Mercedes. Kaye endorsed this check and turned it over to Daniels as payment for the Cadillac. When Kaye gave the certificate of title to Gherity, however, Gherity found that Kaye was not the listed owner of the Mercedes; the certificate of title listed a person in Illinois as the owner. The absence of Kaye's name on the title did not alarm Gherity. He testified that, in his experience of purchasing cars from dealers, the current owner's name often was not on the certificate of title. Since Kaye had "traded in" the Mercedes to Daniels, Daniels filled out an "odometer statement" which read:

> K.L. Daniels, the owner of this vehicle, certifies the vehicle is free of all security

interests, warranty title, assign the vehicle and taxes paid to the person named below and state that the odometer on the vehicle described below now reads 90,231 miles/kilometers.

Daniels then included a description of the Mercedes on the form, signed it, and gave it to the deputy registrar, who gave it to Gherity. Gherity then signed this odometer statement without reading it. Gherity said he did not read the fine print of the form because he knew that it was an odometer statement and that was all that he needed to know. Gherity believed the purpose of the odometer statement was to verify that the odometer reading was true and correct.

Gherity later resold the Mercedes to Carousel Automobiles, Inc., which in turn sold the vehicle to a third party. After that last sale, someone discovered that the Mercedes had been stolen sometime prior to Kaye's ownership of the car. Carousel refunded the third party's purchase price and brought this action against Gherity. Gherity brought a third-party complaint against Kaye, Daniels, and Western Surety Co., which had issued Daniels a surety bond. Gherity settled the claim with Carousel and received a default judgment against Kaye. He proceeded to trial against Daniels and Western Surety.

The trial court ordered judgment for Gherity based upon its determination that the odometer statement, which Daniels filled out upon transfer of title of the vehicle, claimed to present Gherity with proper title to the vehicle.[1]

## ISSUE

▮ Did Daniels' "odometer statement and assignment by seller" form create an enforceable warranty of title?

## ANALYSIS

The scope of review in a case tried by the court without a jury is limited to determining whether the court's findings are clearly erroneous and whether it erred in its conclusions of law.

---

1. The court amended the judgment twice to include additional findings of fact and conclusions of law regarding the relationship between appellants Daniels and Western Surety Co.

*Schweich v. Ziegler,* 463 N.W.2d 722, 729 (Minn.1990). The parties do not dispute the factual findings. Appellants contend the trial court misinterpreted and misapplied the odometer tampering statute. *See* Minn.Stat. §§ 325E.13–.16 (1988). The interpretation of a statute is a question of law which this court may consider de novo. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

Appellants disclaim any liability here because, they argue, the purpose of the odometer tampering statute is to protect consumers, not to guarantee title to the vehicle. We recognize that both the statute and the rule implementing it serve to prohibit odometer tampering and the sale of vehicles with inaccurate odometer readings. *See* Minn.Stat. §§ 325E.14, .15; Minn.R. 7402.0400 (1987). Appellant's argument over statutory purpose has little relevance here, however; the issue is not disclosure of mileage.

■ At issue here is the legal significance of the "Odometer Statement and Assignment by Seller" form that Daniels filled out when the parties transferred title to the Mercedes. This form seems to be a composite of two statutory requirements: a disclosure of the odometer reading under Minn.Stat. § 325E.15 and a certification of title under Minn.Stat. § 168A.11 (1988). Indeed, section 168A.11 contains a cross-reference to vehicles subject to section 325E.15:

> If a dealer buys a vehicle and holds it for resale and procures the certificate of title from the owner or the secured party within ten days after taking delivery of the vehicle, and complies with subdivision 2 hereof, the dealer need not apply for a certificate of title, but *upon transferring the vehicle to another person* other than by the creation of a security interest *shall promptly execute the assignment and warranty of title by a dealer,* showing the names and addresses of the transferee and of any secured party holding a security interest created or reserved at the time of the resale, and the date of the security agreement in the spaces provided therefor on the certificate or as the department prescribes. *With respect to motor vehicles subject to the provisions of section 325E.15, the dealer shall also,* in the space provided therefor on the certificate or as the department prescribes, *state the true cumulative mileage registered on the odometer or that the exact mileage is unknown* if the odometer reading is known by the transferor to be different from the true mileage. The dealer shall mail or deliver the certificate to the department with the transferee's application for a new certificate.

Minn.Stat. § 168A.11, subd. 1 (emphasis added).

This statute provides for proper transfer of vehicle title as well as proper disclosure of mileage on the odometer. Under this statute, Daniels had the legal duty to execute an assignment and warranty of title in addition to disclosing the odometer reading. The "Odometer Statement and Assignment by Seller" form Daniels completed, a form from the Minnesota Department of Public Safety, served to fulfill that statutory requirement.

■ Daniels testified that this form was in common usage at the time he negotiated the sale of the Cadillac and the transfer of the Mercedes to Gherity. Daniels also admitted that he falsely claimed to be the owner when he warranted title to the Mercedes in the odometer statement form.

■ Daniels denies liability here, however, because he contends he was not the owner of the Mercedes. A person may be the "owner" of a trade-in when he holds himself out as the owner by signing documents as the owner of the vehicle. *See Badger State Mutual Cas. Co. v. Swenson,* 404 N.W.2d 877, 879 (Minn.App.1987). *Badger State* involved a man who sold a car for a friend and acquired a trade-in vehicle in the process. He acquired possession, use, and certificate of title to the trade-in vehicle. Even though he disclosed that he was selling the trade-in for his friend, similar to Daniels in this case, we held that he was the "owner" of the trade-in because he had signed the certificate of title in his own name, not in the name of his friend. *Id.*

*Badger State* is instructive in this case because it demonstrates the weight we place upon an individual's personal signature and

**476**

warranty of title. The only distinction between these two cases is that the seller in *Badger State* signed the actual certificate of title in his own name, whereas Daniels signed the odometer statement wherein he certified that he was transferring proper title to the Mercedes to Gherity. While admittedly the odometer statement and assignment form is not the equivalent of a certificate of title, it is another voucher of title upon transfer of a vehicle that is required by state law. *See* Minn.Stat. § 168A.11, subd. 1. In this case, Daniels was a used car dealer who understood the meaning and importance of vehicle transfer procedures. He misrepresented the fact that he received the Mercedes as a trade-in from Kaye, and then signed the disclosure and assignment form as the owner, subjecting himself to liability.

Daniels' liability necessarily invokes the liability of Western Surety who had bonded Daniels. By law, Daniels was required to be bonded to cover "any monetary loss caused by failure of the licensee to meet the [statutory] obligations." Minn.Stat. § 168.27, subd. 24 (1988). This statute provides coverage under the bond even when the dealer violates statutory requirements in connection with the sale or transfer of vehicles. *Minneapolis Auto Auction, Ltd. v. Spicer Auto Sales, Inc.*, 439 N.W.2d 23, 25 (Minn.1989). Thus, Western Surety would be liable, as Daniels' bonding agent, for any damages and fees arising out of Daniels' misconduct.

The trial court found Daniels liable for knowingly submitting false information in the odometer statement and assignment form. While we agree with this result, we note that the trial court focused solely on the odometer tampering statute and did not rely on its interrelationship with the vehicle transfer statute. In light of the facts of this case, where the issue involves title, not odometer readings, the stronger basis for decision is the interrelationship between Minn.Stat. §§ 325E.15 and 168A.11. Herein lies the statutory authority for the form at issue and for Daniels' liability.[2]

### DECISION

The form Daniels signed served as a warranty of title upon transfer of a vehicle as well as an odometer disclosure statement, pursuant to Minn.Stat. §§ 168A.11 and 325E.15. When Daniels filled out the form and signed as "owner," he became the "transferor" who warranted title to the Mercedes and subjected himself to liability for faulty title. The trial court did not err when it held Daniels and Western Surety liable for damages arising out of the trade-in and transfer of the Mercedes.

**Affirmed.**

---

2. We have applied Minn.Stat. § 168A.11 despite the trial court's failure to do so. The trial court reached the proper result. We will not reverse a proper decision simply because the trial court did not rely on the strongest reasons. *Katz v. Katz*, 408 N.W.2d 835, 839 (Minn.1987). Our review of the legal issue presented here is de novo. This court has an obligation to decide cases "in a manner consistent with existing law when there is nothing 'novel or questionable' about the relevant law." *Greenbush State Bank v. Stephens*, 463 N.W.2d 303, 306 n. 1 (Minn. App.1990) (quoting *State v. Hannuksela*, 452 N.W.2d 668, 673 n. 7 (Minn.1990)), *pet. for rev. denied* (Minn. Feb. 4, 1991). Our application of section 168A.11 is nothing novel, here; the vehicle transfer involved, as well as the form Daniels signed, invoke application of that statute in conjunction with Minn.Stat. § 325E.15.