**CAROUSEL AUTOMOBILES, INC., Plaintiff,**

v.

**Edward GHERITY, Defendant and Third–Party Plaintiff, Respondent,**

v.

**K.L. DANIELS, a/k/a Kevin L. Daniels, Third–Party Defendant, Petitioner, Appellant,**

**Bill Kaye, a/k/a William Kaye, et al., Third Party Defendants,**

**Western Surety Co., Third–Party Defendant, Petitioner, Appellant.**

Nos. C3–93–1059, C7–93–1078.

Supreme Court of Minnesota.

Feb. 17, 1995.

Mark A. Olson, Burnsville, for K.L. Daniels.

Jeannice M. Reding, Minneapolis, for Western Sur. Co.

John S. Schomburg, Carlson Center, Minnetonka, for respondent.

## OPINION

KEITH, Chief Justice.

Appellants Kevin L. Daniels ("Daniels") and Western Surety Company ("Western Surety") seek review of a court of appeals' decision affirming the trial court's judgment in favor of respondent, Edward Gherity ("Gherity"). The issue raised on appeal is whether Daniels, in signing as transferor on an Odometer Statement and Assignment by Seller form, thereby warranted title to the motor vehicle. We conclude he did and affirm.

The facts of this case are largely undisputed. In early 1989, William Kaye ("Kaye") approached Daniels about purchasing a 1987 Cadillac from Daniels using Kaye's 1972 Mercedes–Benz as a trade-in for credit on the purchase. At that time, Daniels was a licensed used motor vehicle dealer, and

Western Surety provided the dealership surety bond. Daniels refused to accept the Mercedes as a trade-in, and instead suggested Kaye sell the Mercedes himself and use the proceeds to purchase the Cadillac. Kaye advertised the Mercedes for sale, and Gherity responded. Kaye and Gherity subsequently reached an agreement on the price of the Mercedes. Kaye requested that Gherity meet him to complete the transaction at the Department of Motor Vehicles Deputy Registrar's Office in Prior Lake, Minnesota on February 28, 1989. Gherity assented.

Having reached an agreement with Gherity, Kaye informed Daniels he was selling the Mercedes and wished to purchase the Cadillac. Daniels agreed to drive Kaye to the Deputy Registrar's Office in Prior Lake to transfer the Cadillac to Kaye. On the way, Kaye asked Daniels if he would complete the transfer documents to reflect the Mercedes as a trade-in for the Cadillac so that Kaye could avoid paying $570 in taxes on the Cadillac. Kaye proposed he would transfer the Mercedes to Daniels who, acting as a "strawman," would immediately transfer it to Gherity. Daniels assented to this plan to accommodate Kaye.

As planned, Kaye, Gherity and Daniels met at the Deputy Registrar's Office. Gherity had never met nor spoken to Daniels prior to this meeting. At the counter, the parties completed the documents transferring the Cadillac from Daniels to Kaye and the Mercedes from Kaye to Daniels and then to Gherity. The certificate of title for the Mercedes was in the name of an Illinois resident and had not been signed over to Kaye.

Along with the other transfer documents, Gherity and Daniels signed an Odometer Statement and Assignment by Seller form ("Odometer Statement") showing Daniels as the transferor and Gherity as the transferee. Daniels admitted he signed the Odometer Statement as transferor even though he did not own the vehicle and was not in fact the transferor, and his business records reflected the Mercedes as a trade-in when in fact he did not take the automobile in trade. Gherity did not read the Odometer Statement prior to signing it, but it was his understand-

ing that the purpose of the form was to verify the odometer reading. Although Gherity purchased the Mercedes with a cashier's check made payable to Kaye, he testified he did not know from whom he was purchasing the Mercedes, and he did not know who received the check. Ultimately, Kaye endorsed the cashier's check and turned it over to Daniels who deposited the check into his account as payment for the Cadillac.

Several months later, Gherity transferred the Mercedes to Carousel Automobiles, Inc. ("Carousel"), which in turn sold it to a third party. On August 12, 1989, after this last sale, law enforcement officials notified Carousel that the Mercedes was a stolen vehicle and had been stolen some time prior to the transaction between Kaye, Gherity and Daniels. As a result, Carousel refunded the third-party's purchase price and brought this action against Gherity. Carousel was granted summary judgment against Gherity, and Gherity brought a third-party complaint against Kaye, Daniels and Western Surety.[1] Gherity, Daniels and Western Surety proceeded to trial.

Following a court trial, the Honorable Lucy A. Wieland presiding, the trial court ordered judgment for Gherity based on its conclusion of law that Daniels, in signing the Odometer Statement form as the transferor, warranted title to the vehicle even though he was not the true transferor and even though he did not have title to the vehicle. The court of appeals affirmed.

I.

In 1971, Minnesota enacted Minnesota Statutes chapter 168A, creating a certificate of title system for motor vehicles. The legislature believed a single filing procedure was needed to provide a reliable and verifiable record of motor vehicle ownership. *See Bank North v. Soule,* 420 N.W.2d 598, 602 (Minn.1988). At issue in the present case are the provisions within this chapter relating to transfer of a motor vehicle. Section 168A.11 sets forth the obligations of a dealer in the transfer of a motor vehicle:

1. Prior to trial, Kaye filed as a Chapter 7 debtor in U.S. Bankruptcy Court.

Subdivision 1. If a dealer buys a vehicle and holds it for resale and procures the certificate of title from the owner or the secured party within ten days after taking delivery of the vehicle, and complies with subdivision 2 hereof, the dealer need not apply for a certificate of title, but upon transferring the vehicle to another person other than by the creation of a security interest shall promptly execute the assignment and warranty of title by a dealer * * *. With respect to motor vehicles subject to the provisions of section 325E.15, the dealer shall also, in the space provided therefor on the certificate or as the department prescribes, state the true cumulative mileage registered on the odometer or that the exact mileage is unknown if the odometer reading is known by the transferor to be different from the true mileage. * * *

Minn.Stat. § 168A.11 (1988).[2]

Also at issue is Minnesota's odometer tampering statute codified at Minnesota Statutes sections 325E.13–.16 (1992). Along with providing a prohibition against tampering with an automobile's odometer to reflect lower than actual mileage, the statute requires certain disclosures upon transfer and provides that "[n]o transferor shall violate any rules adopted under this section or knowingly give a false statement to a transferee in making any disclosure required by such rules." Minn.Stat. § 325E.15. The rules promulgated under the authority of this statute provide that the transferor[3] of a motor vehicle must furnish, among other things, "the transferor's

name and current address." Minn.R. 7402.0400 (1993).

At the time of the transaction, the Minnesota Department of Public Safety provided a form entitled "Odometer Statement and Assignment by Seller," which Daniels filled out when the parties transferred title of the Mercedes. The form contains spaces for the transferor's address, signature and date, and for the transferee's name, address and signature, and provides, in part:

You are required by law to disclose the actual odometer reading at the time of transfer. Any false statement may make you liable for civil and criminal penalties pursuant to the Federal Motor Vehicle Information and Cost Savings Act and Minnesota Laws 1973 Chapter 264 and 1977 Chapter 105.

I (WE)_____,
TRANSFEROR'S (SELLERS) NAME—PRINT

THE OWNER(S) OF THIS VEHICLE CERTIFY THE VEHICLE IS FREE OF ALL SECURITY INTERESTS, WARRANT TITLE, ASSIGN THE VEHICLE AND TAXES PAID TO THE PERSON(S) NAMED BELOW AND STATE THAT THE ODOMETER ON THE VEHICLE DESCRIBED BELOW NOW READS _____ MILES/KILOMETERS.

Minnesota Laws "1973 Chapter 264", as referenced in the form, later became the odometer tampering provisions codified at sections 325E.13–325E.16, and "1977 Chapter 105" contained amendments to sections 168A.10 and 168A.11. Thus, the form is a composite of the statutory requirements under sections 168A.10–.11 and sections 325E.13–.16.

In asserting that the statutory scheme does not require a warranty of title by the transferor, Daniels asserts that section

---

**2.** Similarly, § 168A.10 sets forth the obligations of an owner in the transfer of a motor vehicle:
Subdivision 1. If an owner transfers interest in a vehicle other than by the creation of a security interest, the owner shall at the time of the delivery of the vehicle execute an assignment and warranty of title to the transferee in the space provided therefor on the certificate or as the department prescribes. With respect to motor vehicles subject to the provisions of section 325E.15, the transferor shall also, in the space provided therefor on the certificate or as the department prescribes, state the true

cumulative mileage registered on the odometer or that the actual mileage is unknown if the odometer reading is known by the transferor to be different from the true mileage. * * *
Minn.Stat. § 168A.10 (1988). The 1988 code was in effect at the time of the transaction. The current language differs slightly.

**3.** Rule 7402.0100 defines "Transferor" as "any person who transfers the person's ownership in a motor vehicle by sale, gift, or any means other than by creation of a security interest."

325E.15 and section 168A.11 should not be read together to suggest that the Odometer Statement form creates a composite requirement of warranty of title and odometer disclosure as held by the court of appeals. Daniels argues that the single reference to section 325E.15 in section 168A.11, subd. 1 is only a reminder to the dealer that it must also comply with the provisions of section 325E.15. We disagree. Such a narrow reading of sections 325E.15 and 168A.11 fails to recognize that the statutes are to be read together as an integrated statutory scheme that requires both a warranty of title and an odometer disclosure. Both sections 168A.10 and 168A.11 mandate that the transferor "shall * * * execute an assignment and warranty of title" and "shall also * * * state the true cumulative mileage registered on the odometer * * *." Further, the Odometer Statement and Assignment by Seller form itself warns the parties that any false statement they make exposes them to liability under both the motor vehicle title provisions (§§ 168A.10 and .11) and the odometer disclosure provisions (§§ 325E.13–.16). Thus, although section 325E.15 alone may not require a warranty of title, the integrated scheme of sections 325E.15 and 168A.11 does.

Daniels also argues that under the plain language of sections 325E.13–.16 and Minnesota Rules Chapter 7402, the purpose and intent of these provisions is to ensure accurate odometer readings, not to create a warranty of title. Again, we disagree. Although one purpose of sections 325E.13–.16 clearly is to ensure accurate odometer readings, these provisions cannot be read in isolation. Rather, sections 325E.13–.16 and Chapter 168A interrelate in a larger statutory scheme governing transfers of motor vehicles and fulfill a broader purpose than that of sections 325E.13–.16 alone. In *Bank North v. Soule*, this court noted the 1971 statutory enactments leading to the certificate of title system permitted parties to "rely with practical certitude on what was inscribed on the certificate of title with respect to ownership * * *." 420 N.W.2d 598, 602 (Minn.1988). We noted "[t]his system of single filing was obviously designed to protect all persons in commercial transactions involving the vehicle, especially transferees and secured par-

ties." *Id.* at 602. Section 168A.11, however, exempts dealers from the requirement of obtaining a certificate of title when the dealer buys the vehicle and holds it for resale. In such a situation, the purchaser does not have the benefit of the "practical certitude" afforded by a certificate. In our view, an additional purpose of the statutory scheme is to protect transferees in commercial transactions, particularly when the "transferor" is a dealer who does not hold a certificate of title for the vehicle. This purpose is accomplished through the composite requirements of odometer disclosure and warranty of title.

## II.

Daniels next contends that even if the Odometer Statement does create a warranty of title by the transferor, any presumption of ownership created by one's signature as transferor on the form is rebuttable.

Although this court has never addressed whether a putative transferor may rebut a presumption of ownership created by an Odometer Statement form, a party seeking to avoid vicarious liability may introduce extrinsic evidence to rebut a presumption of ownership created when the party's name appears on the certificate of title as owner. *Welle v. Prozinski*, 258 N.W.2d 912, 916 (Minn.1977). This rule is equally applicable for the purpose of avoiding compulsory insurance provisions, *Arneson v. Integrity Mutual Insurance Co.*, 344 N.W.2d 617, 619 (Minn. 1984), and has been applied by the court of appeals in the context of automobile forfeitures. *Rife v. One 1987 Chevrolet Cavalier, Minnesota License No. 509–CRC, VIN No. 1G1JE111OHJ112508*, 485 N.W.2d 318, 321 (Minn.App.1992), *pet. for rev. denied* (Minn., June 30, 1992).

As we noted in *Bank North v. Soule*, the application of the rebuttable presumption rule has been limited to cases in which ownership is to be determined for the assessment of vicarious liability or under the Minnesota No Fault Act. 420 N.W.2d 598, 601 (Minn. 1988). We indicated that in those types of cases, the claimants do not rely on the certificate of title, whereas in commercial settings, the claimants do rely on the certificate of

title. *Id.* at 602. We found this distinction significant in that the purpose of the 1971 statutory enactment of chapter 168A was to give parties a right to rely on the certificate of title; to allow a party to rebut a presumption of ownership created by the certificate of title would frustrate this purpose. *Id.* Thus, we rejected a party's request to extend the rebuttable presumption rule to a situation in which the court determines priorities to the vehicle in a commercial transaction. *Id.* at 602. In the present case, both the statute and the Odometer Statement form warned the parties against making false statements. Despite these warnings, Daniels falsely stated he was the transferor. To allow a party in Daniels' position to rebut the presumption of ownership created by that party's own false statement would be to frustrate the statute's purpose of compelling truthful statements. We therefore decline to extend the rebuttable presumption rule to a situation in which the presumption of ownership is created by a party signing as transferor on the Odometer Statement form.

### III.

■ Finally, Daniels asserts that, in the event the court finds in Gherity's favor, Gherity is not entitled to damages under section 325E.16 because Gherity was not injured by a violation of that provision. Section 325E.16 provides, in part,

Subd. 3. Any person injured by a violation of sections 325E.13 to 325E.16 shall recover the actual damages sustained together with costs and disbursements, including a reasonable attorney's fee, provided that the court in its discretion may increase the award of damages to an amount not to exceed three times the actual damages sustained or $1,500, whichever is greater.

(1992).

Under the plain language of the statute, a person must be "injured by a violation" of the odometer tampering statute to recover damages. In the present case, Gherity believed he was obtaining good title in the vehicle and had no notice that the title was

not valid. After Gherity sold the vehicle to Carousel, it was determined to be stolen and was confiscated by law enforcement officers. Gherity therefore paid damages to Carousel. In this sense, Gherity suffered damages resulting from faulty title to the vehicle.

The dissent suggests the violation had nothing to do with Gherity's damages and Gherity is in the same position he would have been had Daniels never participated. This is simply not the case. Under Minnesota Statutes section 168A.02, every owner of a motor vehicle must apply for a certificate of title in his or her own name. When the owner sells the vehicle, he or she must deliver the certificate of title to the transferee immediately. Minn.Stat. § 168A.10, subd. 1. In light of these provisions, Kaye could not have sold the vehicle directly to Gherity because he did not hold a certificate of title in his name.[4] Daniels, on the other hand, could sell the vehicle due to a statutory loophole permitting dealer resale without a certificate of title. *See* Minn.Stat. § 168A.11, subd. 1. Daniels' fraudulent act of signing as transferor was essential to this transaction because it invoked the loophole permitting the transfer. Had Daniels not signed as transferor, Gherity would not have been able to purchase the vehicle from Kaye and would not be in the position he now occupies. That is, but for Daniels' participation in fraudulently signing as transferor, the transaction would not have been completed and Gherity would not have sustained the loss. It cannot be said, therefore, that Daniels' violation had nothing to do with Gherity's damages.

Nor do we agree with the dissent that this is a mere technical violation for which section 325E.16 acts as a penalty. Section 325E.15 provides that "[n]o transferor shall violate *any* rules adopted under this section or knowingly give a false statement to a transferee in making *any* disclosure required by such rules." (emphasis added). Clearly, we cannot ignore the fact that Daniels violated a rule adopted under this section, even if it appears to us to be a "technical violation." The legislature has provided a remedy for violations, and that remedy does not distin-

---

4. It is irrelevant that Gherity previously believed he would be purchasing the vehicle from Kaye

because such a transaction between Kaye and Gherity alone would never come to pass.

guish between violations in odometer readings and violations in disclosure of any other required information. It is not our position to determine what is an acceptable violation and what is not.

The trial court did not err in awarding Gherity damages together with costs and disbursements, including reasonable attorney fees.

Affirmed.

COYNE, Justice, dissenting.

I respectfully dissent. It appears to me that the majority has converted what was clearly intended as a remedial statute into a penal statute—with the penalty inuring to the benefit of one of the parties to a transaction declared by the majority to be in violation of Minn.Stat. § 325E.15 (1992).

In 1971 Minnesota adopted the Uniform Motor Vehicle Certificate of Title and Anti–Theft Act, codified as Minn.Stat. ch. 168A. The Act requires every vehicle owner to apply to the state registrar of motor vehicles for a certificate of title and prohibits the registration or renewal of registration of any vehicle for which a certificate of title has not been issued. Minn.Stat. § 168A.02 (1992). The Act prescribes the form and content of the application for the first certificate of title of a Minnesota vehicle, Minn.Stat. § 168A.04 (1992), and also sets out the requirements for the transfer of an interest other than by creation of a security interest by an owner, Minn.Stat. § 168A.10 (1992), or the transfer of a vehicle by an auto dealer, Minn.Stat. § 168A.11 (1992). More particularly, Minn.Stat. § 168A.11 provides that when a dealer transfers a vehicle to another person (other than by creation of a security interest), the dealer must execute an assignment and warranty of title, showing the names and addresses of the transferee and any secured party holding a security interest created or reserved at the time of the transfer on the certificate of title "or as the department prescribes."

Using the form prescribed by the registrar, Daniels executed the assignment and dealer's warranty of title. I would have no objection to holding Daniels and his surety responsible for the breach of Daniels' express warranty of title of the stolen 1972 Mercedes, because an auto dealer is generally in a much better position to determine ownership than is the transferee, and in this instance Daniels could have frustrated Kaye's transfer of a stolen vehicle simply by requiring Kaye to produce a certificate of title showing Kaye as the owner of the Mercedes. Nevertheless, here the trial court found as fact that Kaye represented himself as the owner and that Daniels did not claim to own the Mercedes or to be its seller. Though stated as conclusions of law the trial court also ruled that Gherity knew he was buying the car from Kaye, not Daniels, and that the executed form constituted neither an express nor an implied warranty of title.

Sections 168A.10 and 168A.11 also require, "[w]ith respect to motor vehicles subject to the provisions of section 325E.15," an owner or dealer transferor to state on the certificate of title or as the registrar prescribes, the true cumulative mileage registered on the odometer or that the actual mileage is unknown if the transferor knows the odometer reading does not reflect the true mileage.[1]

Daniels did complete an odometer statement certifying that to the best of his knowledge the odometer reading of 90,231 miles reflected the actual mileage of the Mercedes. There is in the record before us no evidence of falsity with respect either to the odometer reading or to Daniels' certification of the mileage. Indeed, Gherity has never claimed that the statement with respect to the odometer reading was inaccurate. It is true, of course, that the odometer statement did not provide the name and address of the actual seller or transferor, Bill Kaye, and that violation of Minn.R. 7402.0400 may expose Daniels to the penalty provisions of Minn.Stat. § 325E.16 (1992). The penalty provisions are found at subdivisions 1 and 2 of section 325E.16:

---

1. The only cross reference between chapter 168A and chapter 325E is that contained in sections 168A.10 and 168A.11.

Subdivision 1. Any person who is found to have violated sections 325E.13 to 325E.16 shall be guilty of a gross misdemeanor.

Subd. 2. In addition to the penalties provided in subdivision 1, any person who is found to have violated sections 325E.13 to 325.16 shall be subject to the penalties provided in section 8.31.

It is, however, only the state that is entitled to invoke the *penalty* provisions. A party to the transaction is limited to the *remedy* provided by subdivision 3 of section 325E.16:

Any person injured by a violation of sections 325E.13 to 325E.16 shall recover the actual damages sustained together with costs and disbursements, including a reasonable attorney's fee, provided that the court in its discretion may increase the award of damages to an amount not to exceed three times the actual damages sustained or $1,500, whichever is greater.

Despite the possibility of treble damages (which might be considered a penalty), subdivision 3 provides a *remedy* to one injured by a violation of the odometer tampering statute. Hence, the complainant must demonstrate not only that he has been injured and the extent of that injury but he must also prove that the violation of sections 325E.13 to 325E.16 *caused* his injury.

As I mentioned earlier, the only violation of sections 325E.13 to 325E.16 that has been shown here is the failure to correctly identify Kaye as the transferor as required by Minn.R. 7402.0400. Certainly, the false identification of the transferor could under some circumstances cause the damages of an unsuspecting transferee. In view, however, of the trial court's determination that Gherity was well aware that Kaye, not Daniels, was the seller/transferor and that Daniels never represented to Gherity that he was the transferor, Gherity is hardly in any position to assert that the failure to correctly identify the transferor caused his damages. Nevertheless, although the majority as well as the

trial court recognize that Gherity knew that Daniels did not claim to be either the owner or transferor of the Mercedes and that Gherity was not misled by the incorrect identification of the transferor on the odometer certificate, the majority regards that violation of the rule prescribing the form of the odometer certificate as the basis for an award of damages pursuant to section 325E.16 even though the violation had nothing to do with causing Gherity's damages. That the Mercedes Kaye sold him had been stolen was, of course, the actual cause of Gherity's damages.

Moreover, the requirement that the transferor's name and address be included on the odometer statement does not appear anywhere in sections 325E.13 to 325E.16, but only in Minn.R. 7402.0400. The stated purpose of chapter 7402 of the Minnesota Rules is "to prescribe the manner in which disclosure of odometer reading and its accuracy shall be made to the transferee at the time of transfer of a motor vehicle." Minn.R. 7402.0200. Neither the odometer statute sections 325E.13 to 325E.16 nor Rule 7402.0400 refer to a warranty of title. Therefore, since the only violation of the odometer statute—the incorrect identification of the transferor on the odometer statement—was a mere technical violation as between Daniels and Gherity, both of whom knew that Kaye was the actual transferor, holding Daniels and his surety liable for the amount of Carousel's judgment against Gherity plus costs, disbursements and attorney fees is to treat section 325E.16 as a penalty for a technical violation.

The majority explains its imposition of liability through application of section 325E.16 by melding chapters 168A and 325E in what the majority characterizes as a "larger statutory scheme." It does not explain, however, what legal basis there is for combining two discrete chapters codifying acts adopted by the legislature in different sessions.[2] Subsequent to the adoption of the odometer statute, sections 168A.10 and 168A.11 were

---

**2.** In 1971 the legislature adopted the Uniform Motor Vehicle Certificate of Title and Anti–Theft Act and codified it as Minn.Stat. ch. 168A. The odometer statute, which is not a part of the

Uniform Certificate of Title Act and which is codified as Minn.Stat. §§ 325E.13 to 325E.16, was not adopted until 1973.

amended to import the requirements of section 325A.15. There is no mention in chapter 168A of any other section of the odometer statute. Had the legislature intended to subject violations of section 168A.10 or section 168A.11 to the penalty or remedial provisions of section 325E.16, I have not the least doubt that it would have said so. Instead, it appears to me that the legislature left one injured by a violation of section 168A.10 or 168A.11 to his or her common law remedies. Surely, had Gherity relied to his detriment on the warranty of title contained in the odometer statement signed by Daniels, Gherity could recover his damages; but the trial court found as fact that, under the circumstances of the case, the parties did not intend that the odometer statement given by Daniels constitute a warranty of title.

Gherity, then, is left to his remedy against Kaye, from whom he bought the Mercedes. Of course, Gherity has already secured a default judgment against Kaye. That that judgment may be uncollectible is, indeed, Gherity's misfortune. It does, however, leave Gherity in the same position that he would have occupied had Daniels never been involved and had Kaye and Gherity completed their transaction without Daniels' participation.

Moreover, even if Daniels had given a warranty of title on which Gherity relied, the amount of Carousel's judgment against him would not constitute the measure of his damages. Gherity paid Kaye $12,500 for the Mercedes; it is that amount, less the value of the use of the car from the date of acquisition to the date Gherity traded it to Carousel that constitutes Gherity's damages. The loss of the value of the Mercedes as a trade-in on a new automobile is a matter of loss of bargain, not damages resulting from breach of warranty of title.

Finally, it is unlikely, I think, that Daniels will—to put it in the vernacular—come away scot free. It seems probable to me that even though the state may see no reason to treat the technical violation of section 325E.15 as a gross misdemeanor, it may look to Daniels for payment of any sales tax avoided by the "convenience delivery." Although that may be a suitable penalty for Daniels' unwitting participation in Kaye's scheme to transfer a stolen vehicle, it does seem to me that the amount of sales tax that John or Jane Q. Public must pay on a replacement automobile that is new or of somewhat more recent vintage than its predecessor ought not to depend on whether John or Jane trades the old car to the dealer as partial payment for the new automobile or sells the old car directly to a third party. In short, even though transactions of many kinds and degrees of complexity are legitimately structured to reduce or avoid tax liability, to require this very ordinary kind of transaction to be arranged in a certain way to avoid paying what many members of the public look on as double taxation does not seem to me very sensible. That, however, is a matter for the legislature.

For the foregoing reasons, I would reverse the decision of the court of appeals and vacate the judgment entered in the district court.

GARDEBRING, Justice, dissenting.

I join in the dissent of Justice Coyne.

PAGE, Justice, dissenting.

I join' in the dissent of Justice Coyne.