AMERICAN NATIONAL GENERAL INSURANCE COMPANY, Appellant,

v.

Paul Gerald SOLUM, et al., Respondents,

Adam Kraus, Party in Intervention.

No. C8–00–2082.

Court of Appeals of Minnesota.

July 17, 2001.

Review Granted Sept. 25, 2001.

Michael W. Lowden, Stempel & Associates, PLC, Hopkins (for appellant).

Joseph L. Hammell, Rippe, Hammell & Murphy, Caledonia (for respondents).

Steven E. Tomsche, Tomsche, Sonnesyn & Tomsche, Minneapolis (for intervenor).

Considered and decided by KLAPHAKE, Presiding Judge, CRIPPEN and STONEBURNER, Judges.

## OPINION

KLAPHAKE, Judge

Appellant American National General Insurance Company (American National) brought this declaratory action against its insureds, respondents Paul and Helen Solum, to determine whether it was obligated to provide uninsured motorist coverage. American National now challenges the jury's finding that respondents' son, Daniel Solum, was the owner of the involved

vehicle, a Chevy S–10 truck (Chevy). American National argues that because Helen Solum applied for and received the certificate of title, she complied with the statutory requirements setting out the procedures for transferring a vehicle and extrinsic evidence to the contrary should not have been allowed. We agree and reverse.

## FACTS

Daniel Solum had been arrested for driving while intoxicated and was concerned that the Chevy's license plates would be confiscated. On April 12, 1995, Daniel transferred the certificate of title for the Chevy to his mother, but retained full use of it. The parties acknowledge that the transfer was intended solely to protect the Chevy's license plates from impoundment.

Daniel and his father began operating a farming partnership in 1996. Daniel drove to the farmstead daily and left the Chevy in front of the house while working in the field. On January 31, 1997, Paul Solum was in an accident while driving the Chevy. American National tendered coverage under Paul's uninsured motorist benefits because Daniel had allowed the Chevy's insurance to lapse. The insurance company defended Paul under a reservation of coverage. After an investigation, however, American National discovered the Chevy's certificate of title listed Helen Solum as owner and refused uninsured motorist coverage.

American National claimed that the policy providing Paul Solum's uninsured motorist benefits did not cover its insured while occupying a motor vehicle that he owned or leased but failed to insure. Because Paul was driving a vehicle owned by his wife, but not listed under their insurance policy, he is excluded from coverage under his policy.

After considering extrinsic evidence, the jury found that Daniel Solum owned the Chevy. On appeal, American National argues that because the Solums complied with the certificate of title transfer statute, extrinsic evidence should not have been allowed to challenge ownership.

## ISSUE

Does completing transfer of title constitute compliance under Minn.Stat. § 168A.10, thus establishing ownership of a vehicle?

## ANALYSIS

■■■ "On appeal from a declaratory judgment, we apply a clearly erroneous standard to the factual findings but review the trial court's determination of questions of law de novo." *Rice Lake Contracting Corp. v. Rust Env't & Infrastructure, Inc.,* 549 N.W.2d 96, 98–99 (Minn.App.1996), *review denied* (Minn. Aug. 20, 1996). Application of a statute to the undisputed facts of a case involves a question of law, and the trial court's decision is not binding on this court. *Boubelik v. Liberty State Bank,* 553 N.W.2d 393, 402 (Minn.1996).

American National argues that the transfer of title between Daniel and his mother complied with the statute's filing requirements. The Solums argue that compliance requires completely filling out the certificate of title, which serves as the application, and delivery of the vehicle. Because they omitted answers on the application and delivery of the Chevy never occurred, they argue that compliance was incomplete.

■■■ The court is presented with the task of determining what constitutes compliance with Minn.Stat. § 168A.10. An individual who complies with the statute establishes incontrovertible evidence of ownership of the vehicle. *Vue v. State*

*Farm Ins. Cos.,* 582 N.W.2d 264, 266 (Minn.1998); *Arneson v. Integrity Mut. Ins. Co.,* 344 N.W.2d 617, 618 (Minn. 1984); *Welle v. Prozinski,* 258 N.W.2d 912, 916 (Minn.1977). One who fails to comply, however, may introduce extrinsic evidence to prove ownership. *Welle,* 258 N.W.2d at 916.

When the owner of a motor vehicle sells or transfers a vehicle, he or she must deliver the certificate of title to the transferee immediately. Minn.Stat. § 168A.10, subd. 1. The transferee must then apply for a certificate of title in his or her own name. Minn.Stat. § 168A.02 (2000). Daniel purchased the Chevy S–10 truck in 1994 and then applied for and received a certificate of title. In 1995, Daniel transferred title to his mother and she signed the certificate. Minn.Stat. § 168.10, subds. 1, 2. The State of Minnesota received and processed the application listing Helen as the owner of the Chevy S–10 truck.

▪ The motor vehicle title statute is procedural; it identifies the necessary steps to transfer a vehicle title from one person to another. Here, the Solums completed the process and Helen Solum received the certificate of title in return. The Solums argue that the omissions on the certificate of title for the odometer reading and the sale price of the vehicle constitute noncompliance. The omissions in the application, however, did not prevent the state from processing the title. Thus, the Solums substantially complied with the statute in providing the state with sufficient information to enable the transfer to be processed.

▪ The Solums also argue that they did not comply with the statute because the vehicle was not delivered. While this may be a persuasive argument if the situation involved a transfer for the sale of a vehicle and the transferee sought possession of the vehicle, here Helen did not request delivery. The evidence shows that the parties intended for Daniel to continue to drive the Chevy. Because this was the Solums' intent, there is no requirement of actual delivery. As the owner of the truck, Helen was free to allow others to drive and maintain it.

It is well established that courts allow extrinsic evidence to determine ownership of the vehicle to protect the seller of the vehicle from any liability that may occur prior to the certificate of title properly being transferred. *See Bank North v. Soule,* 420 N.W.2d 598, 601–02 (Minn. 1988); *Arneson,* 344 N.W.2d at 618; *Welle,* 258 N.W.2d at 916. Cases allowing extrinsic evidence to establish ownership have all addressed situations in which there was an intended transfer, but the paperwork had not been completed. *Arneson,* 344 N.W.2d at 617 (allowing extrinsic evidence to show that sale of vehicle had occurred two days before accident); *Welle,* 258 N.W.2d at 916 (permitting noncomplying seller to demonstrate actual facts through extrinsic evidence of sales transaction in order to avoid vicarious liability). Here, the paperwork was in order, the Solums intended to transfer title of the Chevy, but simply did not intend to deal with the responsibilities associated with ownership. There is a strong policy interest against allowing a family owning multiple vehicles to purchase insurance coverage on only one vehicle and recover for injuries while operating the other. *See Lynch v. American Family Mut. Ins. Co.,* 626 N.W.2d 182, 187 (Minn.2001).

We therefore conclude that Helen Solum's application and receipt of the certificate of title for the Chevy S–10 truck constituted compliance with Minn.Stat.

168A.10, and the trial court erred in allowing extrinsic evidence.[1]

## DECISION

Because the Solums complied with the statutory requirements for transfer of the certificate of title, Helen Solum is the incontrovertible owner of the Chevy S–10 truck. The trial court, therefore, erred in allowing extrinsic evidence to show other claimed ownership of the Chevy.

**Reversed.**

---

1. American National raised an alternative argument that the vehicle transfer was an illegal act and that a contract for insurance cannot be based on an illegal act. Because we find that the Solums complied with the statute, we need not reach this argument.